### PEOPLE v HEMPTON

1. CRIMINAL LAW—EVIDENCE—WITNESSES—CREDIBILITY—TESTIFYING DEFENDANT—FELONY CONVICTION.

> A trial judge's ruling that the prosecutor could introduce defendant's prior felony-conviction record to test his credibility as a witness was not reversible error where defense counsel, having requested the ruling regarding what portions of defendant's record would be admissible, did not object to it and defendant thereafter voluntarily testified about his felony convictions.

2. CRIMINAL LAW—EVIDENCE—WITNESS—CREDIBILITY—TESTIFYING DEFENDANT—FELONY CONVICTIONS.

> A prosecutor may cross-examine a testifying defendant concerning his prior criminal convictions to test his credibility but is not obligated to do so.

3. CRIMINAL LAW—TRIAL—OPENING STATEMENT—WAIVER—EFFECTIVE LEGAL ASSISTANCE.

> The giving or not giving of an opening statement for the defense is a matter of trial tactics, and where a defendant fails to show affirmatively that he was prejudiced by his counsel's failure to make an opening statement and that his trial thereby became a "sham" or "farce", or that such failure denied him effective assistance of counsel, there is no error.

4. CRIMINAL LAW—TRIAL—OPENING STATEMENT—WAIVER—EFFECTIVE LEGAL ASSISTANCE.

> Failure to make an opening statement by defense counsel was not a significant factor in effectuating defendant's conviction nor did it make the trial a "sham", where defendant's counsel vigorously cross-examined all of the prosecution witnesses, including the complainant, introduced favorable evidence for defendant and gave an effective closing argument.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 327, 1175.

[3, 4] 53 Am Jur, Trial §§ 69, 454.

[5] 30 Am Jur 2d, Evidence § 1086.

[6, 7] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 32.

[7, 8] 21 Am Jur 2d, Criminal Law § 536.

5. EVIDENCE—WEIGHT—MOTIONS—NEW TRIAL.

> An objection going to the weight of the evidence can be raised only by a motion for a new trial, and on appeal review is for abuse of discretion if the motion is denied; thus because of defendant's failure to move for a new trial, trial judge's discretion was never invoked, and appeal on this issue will not lie.

6. KIDNAPPING—ASPORTATION—INDEPENDENT SIGNIFICANCE—OTHER CRIMES.

> A movement of the victim does not constitute an asportation under the kidnapping statute unless it has significance independent of the assault and, unless the victim is removed from the environment where he is found, the consequences of the movement itself to the victim are not independently significant from the assault—the movement does not manifest the commission of a separate crime—and punishment for injury to the victim must be founded upon crimes other than kidnapping (MCLA 750.349).

7. KIDNAPPING—ASPORTATION—INDEPENDENT SIGNIFICANCE—GROSS INDECENCY.

> Convicting defendant of kidnapping, thereby subjecting him to a possible life sentence (and to an actual sentence, tantamount to life imprisonment, of 45 to 60 years) because defendant, after forcing the complainant into his truck, drove back to defendant's house where he and the complainant had shortly before spent a number of hours together, is beyond the policy of the kidnapping statute and requires reversal of that conviction; however, there being no possibility of a compromise jury verdict, defendant's conviction of gross indecency is affirmed since all the facts regarding the kidnapping charge were relevant to the gross indecency charge (MCLA 750.338, 750.349).

8. CRIMINAL LAW—GROSS INDECENCY—SENTENCE—EXCESSIVE—DISCRETION—ABUSE.

> A minimum sentence which exceeds two-thirds of the statutorily prescribed maximum for the crime charged is excessive and constitutes an abuse of discretion; therefore, defendant's minimum sentence for gross indecency is revised to three years, four months, which is two-thirds of the maximum of five years *(People v Tanner,* 387 Mich 683 [1972]).

Appeal from Genesee, Ollie B. Bivins, Jr., J. Submitted Division 2 February 8, 1972, at Lansing. (Docket No. 10999.) Decided November 27, 1972.

Thomas R. Hempton was convicted of kidnapping and of gross indecency. Defendant appeals. Conviction of gross indecency affirmed; conviction of kidnapping reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*W. Schuyler Seymour, Jr.,* for defendant on appeal.

Before: McGREGOR, P. J., and LEVIN and TARGONSKI,* JJ.

McGREGOR, P. J. The defendant was indicted on one count of kidnapping[1] and one count of gross indecency.[2]

Defendant denied the commission of all of the crimes charged; after a jury trial in circuit court, he was found guilty and was sentenced to a prison term of 45 to 60 years on the kidnapping charge, and sentenced to 4-1/2 to 5 years on the gross indecency charge.

A careful review of the record reveals the following occurrences on the evening of July 21, 1970, and the morning of July 22, 1970.

Defendant and the complaining witness struck up an acquaintanceship on the afternoon of July 21, 1970. Berry, the complaining witness, was 18 years old, 6' 1" tall, and weighed 175 pounds; he

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.349; MSA 28.581.

[2] MCLA 750.338; MSA 28.570.

was unemployed. This defendant was 41 years old, 5′ 8-1/2″ tall, and weighed 130 pounds. Defendant, a carpenter, suggested that he might be able to compensate Berry if he would assist in repairing some houses in the neighborhood and they both proceeded to drive to Hempton's house. During that afternoon and evening Berry and Hempton were in and out of Hempton's house several times. They inspected a job site, ate supper at a local "coney-island" restaurant, and went to Berry's rooming house to inform the landlady that Berry might be out late.

Hempton then suggested that Berry sleep in Hempton's house so that the two of them could get to the job early the next morning. Berry did not wish to spend the night but did stay on to drink some beer and watch television.

After watching television for two hours, Berry informed Hempton that he had to return to his boarding house. Berry claimed that Hempton then became angry and attempted to persuade him to stay for the night. Later in the evening, when Hempton had stepped out of the room, Berry started to walk the six-mile journey back to his rooming house. After discovering Berry's departure, Hempton took off after him in his pickup truck. He drove up alongside Berry and Berry voluntarily entered the truck, thinking that Hempton would take him to his boarding house: "He waved for me to get into the truck, so I got in the truck".

After entering the truck, Berry discovered that Hempton had a big knife in his right hand. Berry was forced to kneel down on the floor of the truck; Hempton then proceeded to make a U-turn and drive his stick-shift truck back to his house where he forced Berry into Hempton's bedroom at knife-

point. During the rest of the night Hempton forced Berry to engage in several sexual acts.

Berry testified that, afterwards, defendant fell asleep and that he, then, fell asleep. However, he remembered awakening and using the bathroom several times during the night. The next morning, Berry fixed coffee for Hempton and himself. After Hempton left the house, Berry "sipped" his coffee and then left the house and summoned a police cruiser which was nearby.

At the end of the people's case and out of the presence of the jury, the trial judge questioned the defendant as to his desire to testify in his own behalf. At that time, defense counsel inquired as to what portions of the defendant's prior record the prosecutor would be allowed to introduce into evidence. The judge ruled that only convictions for felonies would be allowed, and it was settled that there were three felony convictions which could be introduced by the prosecutor for the purpose of testing defendant's credibility.

On direct examination, the following dialog took place between defendant and his counsel:

"*Q.* Mr. Hempton, prior to coming to court, you are aware that you did not have to testify, is that correct, sir?

"*A.* Yes, I was.

"*Q.* Knowing this, you advised me that you wanted to take the stand. Is that correct?

"*A.* Yes, I did.

"*Q.* You are also aware of the fact that you could be questioned by the assistant prosecutor, as to your past criminal record, is that correct?

"*A.* Yes, I am.

"*Q.* Sir, you have been convicted of crimes in the past?

"*A.* Yes, I have.

"*Q.* You have been tried and convicted on three separate occasions, is that correct?

"*A.* That is correct.

"*Q.* You have been tried and convicted for breaking and entering, is that correct?

"*A.* That is correct.

"*Q.* You have been tried and convicted of soliciting and accosting a minor child, is that correct?

"*A.* That is correct.

"*Q.* You have been tried and convicted of uttering and publishing, is that correct?

"*A.* That is correct.

"*Q.* You have spent some time in Jackson Prison, is that correct?

"*A.* Eight years, two months, and three days."

On cross-examination, the prosecuting attorney did not ask defendant about such prior felony conviction record.

Defendant now argues that the trial judge committed reversible error in holding that prior felony convictions would be allowed into evidence and that no objection was necessary. Defense counsel raised the subject of prior convictions, and at no time did he make any objections to the proposed use of such evidence by the prosecutor. A defendant who testifies in his own behalf may be cross-examined concerning his prior criminal convictions for the purpose of testing his credibility. *People v Payne,* 27 Mich App 133 (1970).

Defendant next contends that his conviction should be reversed because defense counsel did not make or give an opening statement to the jury. The transcript of trial reveals that, after the prosecutor gave his opening statement, defense counsel was asked by the court if he intended to give such a statement. At that time, defense counsel stated that he would reserve his opening statement to the jury. After the prosecution rested its case, the

defense counsel advised the court that he would not give an opening statement and would waive that right.

In *People v T J Smith,* 33 Mich App 360, 361 (1971), the defendant claimed on appeal that reversible error occurred when his counsel failed to make an opening statement. This Court rejected that contention and held:

"At the commencement of trial defense counsel indicated to the court that he desired to withhold opening remarks. Although the record demonstrates that defense counsel failed to make any opening remarks before presenting the defense to the jury, no authority has been presented which suggests that this procedure was error. Moreover, the defendant does not contend nor does the record suggest that the defense was prejudiced by this procedure."

The giving or not giving of an opening statement is a matter of trial tactics. There is no affirmative showing that defendant's case was prejudiced by his counsel's failure to make an opening statement. Defendant does not show that the failure of his counsel to make an opening statement rendered his trial a "sham" or a "farce", or denied him effective assistance of counsel. *People v Degraffenreid,* 19 Mich App 702 (1969).

Defendant's counsel vigorously cross-examined all of the prosecutor's witnesses, including the complaining witness, introduced favorable evidence for the defendant, and gave an effective closing argument. Thus, the defendant's trial was not a "sham", nor can the theory of the defense counsel in refusing to give an opening statement be said to have been a significant factor in bringing about the defendant's conviction.

Defendant further contends that the jury verdict of kidnapping was "against the great weight of the

evidence". Defendant did not make a motion for a new trial. In *People v Mattison,* 26 Mich App 453, 459–460 (1970), this Court said:

"An objection going to the *weight* of the evidence can be raised only by a motion for a new trial. On appeal, we review a denial for abuse of discretion. Here, no motion for a new trial was filed. The trial judge's discretion was, therefore, not invoked." (Emphasis in original.)

However, on the authority of *People v Otis Adams,* 34 Mich App 546 (1971), *leave granted* 385 Mich 784 (1971), and *People v Taylor,* 386 Mich 204 (1971), we reverse defendant's conviction for kidnapping.

In *People v Adams, supra,* p 568, we reviewed Michigan's kidnapping statute in the context of a movement of the victim incidental to the commission of another crime, and, following the lead of the California Supreme Court and the New York Court of Appeals, "concluded that under the kidnapping statute a movement of the victim does not constitute an asportation *unless it has significance independent of the assault.* And, unless the victim is removed from the environment where he is found, the consequences of the movement itself to the victim are not independently significant from the assault—the movement does not manifest the commission of a separate crime—and punishment for injury to the victim must be founded upon crimes other than kidnapping." (Emphasis supplied.)

This is not a typical street abduction. Typically, the offender's purpose is to facilitate the commission of the crime of armed robbery or rape, which, like kidnapping, are punishable by a sentence of life or any term of years. Here, the defendant's

purpose was to facilitate the commission of a crime for which the legislatively prescribed penalty is a maximum of five years.[3] Convicting the defendant of the crime of kidnapping and thereby subjecting him to a possible life sentence (and to an actual sentence, tantamount to a life sentence, of 45 to 60 years) because of the movement in the defendant's truck back to the house where the victim and the defendant had shortly before spent a number of hours together, is clearly a case of the "tail wagging the dog" and beyond the policy of the statute.

Defendant's conviction of kidnapping is reversed, and since there was no possibility of a compromise verdict by the jury in this case, his conviction of gross indecency is affirmed. All the facts that were brought out on the kidnapping charge were relevant on the gross indecency charge. See *People v Taylor, supra.*

Finally, the defendant contends that the trial court's sentence on the conviction of gross indecency was excessive, and constituted an abuse of discretion. During the pendency of this appeal, *People v Tanner,* 387 Mich 683 (1972), was decided by the Michigan Supreme Court. By special motion, the defendant requested this Court to consider the *Tanner* case in conjunction with this last issue, as the issue raised by this defendant is closely related to the issue in the *Tanner* case. Since a decision in the *Tanner* matter was released during the pendency of this appeal, we have consented to consider the *Tanner* claim.

On the basis of the decision of *People v Tanner, supra,* and in light of 1948 CL 769.24; MSA 28.1094, and *Moore v Parole Board,* 379 Mich 624,

---

[3] MCLA 750.338; MSA 28.570.

638, 639 (1967), we reverse the excess portion of defendant's minimum sentence heretofore imposed by the trial court of 4-1/2 years, but we affirm the valid remainder of such minimum sentence, which constitutes two-thirds of the maximum of the 5 years. Therefore, defendant's valid minimum sentence now stands as 3 years 4 months, in compliance with the mandate of *Tanner, supra.*

Defendant's conviction of gross indecency is affirmed.

Defendant's conviction of kidnapping is reversed.

All concurred.