PEOPLE v NASH

1. KIDNAPPING—ASPORTATION—INDEPENDENT SIGNIFICANCE—ESCAPE.

It is a jury question whether a prisoner who escaped while being transported in a state vehicle that was on an approved travel route and who left the guard bound and gagged at a spot approximately 165 feet from the road committed the offense of kidnapping because the jury must determine whether the asportation of the victim was sufficient to constitute the offense by possessing significance independent of the underlying offense of escape.

2. KIDNAPPING — ASPORTATION — INDEPENDENT SIGNIFICANCE — REMOVAL FROM ENVIRONMENT — RISK OF HARM.

The first proper inquiry to focus upon in a kidnapping case is the requirement that the asportation possess significance independent of the underlying offense; a determination of this standard may include but not be limited to the following elements: (1) asportation for the purpose of facilitating the commission of the underlying offense and (2) removal of the victim from his environment consisting of the totality of the surroundings, animate and inanimate; the focus of the inquiry then proceeds to the second standard requiring a determination of whether the asportation substantially increased the risk of harm over and above that present in the underlying offense, and if the inquiry to both standards is answered in the negative, the asportation at issue will not be deemed sufficient to support the independent charge of kidnapping.

3. KIDNAPPING—ASPORTATION—INDEPENDENT SIGNIFICANCE—INSTRUCTIONS TO JURY—ESCAPE.

Reversible error resulted in a trial of an Ionia reformatory inmate for kidnapping his guard while effecting an escape from the guard when he was being transported to Jackson State Prison where a trial judge failed to give *sua sponte* an appropriate instruction to the jury that the asportation at issue must

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 1 Am Jur 2d, Abduction and Kidnapping §§ 1–10.
[3] 53 Am Jur, Trial § 842.

be found to possess significance independent of the escape offense before it would support a conviction for kidnapping.

Appeal from Ingham, Louis E. Coash, J. Submitted Division 2 December 5, 1972, at Lansing. (Docket No. 14008.) Decided May 23, 1973.

Donald Nash was convicted of kidnapping. Defendant appeals by leave granted. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *James R. Ramsey,* Assistant Prosecuting Attorney, for the people.

*Anderson, Patch, Rosenfeld, Potter & Grover,* for defendant on appeal.

Before: BRONSON, P. J., and R. B. BURNS and DANHOF, JJ.

BRONSON, P. J. Defendant seeks leave to appeal from a 1955 jury conviction for kidnapping. MCLA 750.349; MSA 28.581. We granted leave to consider whether *People v Otis Adams,* 34 Mich App 546 (1971), *leave granted,* 385 Mich 784, requires a reversal of this conviction.

The facts precipitating the challenged conviction are set forth with detail. On the evening of September 18, 1954, Mr. Haynor, a lieutenant at the Ionia Reformatory, was directed to transport defendant to the Jackson State Prison for an emergency appendectomy. Albert Miller, an inmate nurse, accompanied defendant on this transfer. Defendant, who was on a stretcher, was placed in the back of a state-owned "dark green Chevrolet suburban-type vehicle" with Miller. Mr. Haynor

"got in behind the wheel and started for Jackson". Upon arriving at Lansing, Haynor headed south on US-127 toward Jackson, an approved route of travel for transporting inmates to Jackson Prison. Somewhere between Holt and Mason, defendant seized Haynor and placed a sharp object into the back of his neck. At this time defendant told Haynor to "keep right on driving" while "nurse Miller climbed over into the front seat * * * with some rolls of adhesive tape and began tearing strips off of this roll and sticking them along the dash in front".

Defendant directed Haynor to take the first left turn off US-127, then the first right turn and pull off to the side of the road. At this point Haynor was bound with the tape and forced into the back of the vehicle with his face on the floor. Upon completing these preparations for the escape, Miller began driving the vehicle while defendant remained with the captive driver. Mr. Haynor testified that the vehicle proceeded a short distance and turned right off US-127; continued about one-half mile and turned left; proceeded another one-half mile and turned left again. After proceeding a short distance, the vehicle stopped and Haynor was pulled from the truck. He was led into a corn field where he was bound, gagged, and covered with pieces of sheeting and adhesive tape. The inmates fled. Lieutenant Haynor freed himself in approximately one hour.

It was established by additional evidence that the entire episode transpired within 30 to 45 minutes and Haynor's location was in a corn field three-tenths of a mile from US-127 and approximately 165 feet from the road. At the conclusion of trial the jury found defendant guilty of kidnapping. From this conviction defendant appeals, alleging that the asportation of the victim was insuf-

ficient to constitute the offense of kidnapping since it did not possess significance independent of the underlying offense.

The instant appeal was founded upon this Court's recent decision in *People v Otis Adams, supra*, which established the standards for determining the nature and extent of asportation necessary to sustain a kidnapping charge. In *Adams,* the defendant was convicted of kidnapping for his participation in a prison riot during which several captives were forcefully moved throughout the prison until officials agreed to a meeting in which the inmates' grievances could be aired. The *Adams* Court recognized the departure from the "any asportation" standard and adopted the following standard for measuring the degree of asportation necessary from *People v Daniels,* 71 Cal 2d 1119, 1139; 80 Cal Rptr 897, 910; 459 P2d 225, 238 (1969):

> " 'We hold that the intent of the Legislature * * * was to exclude from [the statute's] reach not only "standstill" robberies * * * but also those in which the movements of the victim are *merely incidental* to the commission of the robbery and *do not substantially increase the risk of harm* over and above that necessarily present in the crime of robbery itself.' " pp 566–567. (Emphasis added.)

The element involving a substantially increased risk of harm to the victim was emphasized by the California court in *People v Timmons,* 4 Cal 3d 411; 93 Cal Rptr 736; 482 P2d 648 (1971) and likewise adopted by the *Adams* Court. These cases creating the *Daniels-Timmons* rule[1] contain at least two primary elements requiring independent analysis: (1) whether the asportation is incidental

---

[1] *See, e.g., People v Rocco,* 21 Cal App 3d 96; 98 Cal Rptr 365 (1971).

to the committed offense and (2) whether the asportation substantially increases the risk of harm to the victim.

The asportation standard employed by the *Adams* Court follows the *Daniels-Timmons* rule and is found in the following statements:

"The harm sought to be prevented is not movement of the victim, but his removal from one place to another and attendant *increased risks to the victim.*

\* \* \*

"We have concluded that under the kidnapping statute a movement of the victim does not constitute an asportation unless it has *significance independent of the assault."* p 568. (Emphasis added.)

The application of these generalized standards can be a difficult task, and is so here. The *Adams* Court offered some guidance in determining whether the asportation is independently significant by stating that:

"[U]nless the victim is removed from the *environment* where he is found, the consequences of the movement itself to the victim are not independently significant \* \* \* ." p 568. (Emphasis added.)

"The relevant environment is the totality of the surroundings, animate and inanimate." *Adams, supra,* p 569. This interpretation of the *Adams* decision conforms with that found in *People v Mobley,* 40 Mich App 551 (1972).

In *People v Hempton,* 43 Mich App 618 (1972), the Court attempted to further refine and specify the analytical element of the independently significant standard. The *Hempton* Court found that the transportation of the victim in a pickup truck back to defendant's house where the parties had previously spent some time was not a typical street

abduction. Defendant's conviction for kidnapping was reversed by the *Hempton* Court since the asportation at issue fulfilled defendant's purpose *of facilitating the commission* of the indecent liberties offense for which he was charged. The California Courts have likewise employed this test of whether the asportation facilitated the commission of the underlying crime to determine the validity of a kidnapping charge. *People v Beaumaster,* 17 Cal App 3d 996; 95 Cal Rptr 360 (1971); *People v Hill,* 20 Cal App 3d 1049; 98 Cal Rptr 214 (1971).

Based upon these authorities we perceive the proper inquiry to focus first upon the requirement that the asportation possess significance independent of the underlying offense. A determination of this standard may include but not be limited to the following elements: (1) asportation for the purpose of facilitating the commission of the underlying offense and (2) removal of the victim from his environment consisting of the totality of the surroundings, animate and inanimate. The focus of the inquiry then proceeds to the second standard requiring a determination of whether the asportation substantially increased the risk of harm over and above that present in the underlying offense. If the inquiry to both standards is answered in the negative, the asportation at issue will not be deemed sufficient to support the independent charge of kidnapping.[2] Applying these standards to

[2] The need for such detailed analysis may be alleviated for future cases since the Legislature has enacted a new statute replacing the kidnapping statute as a vehicle to control the use of hostages by prisoners to effectuate escapes. This statute, taking effect January 1, 1973, provides:

"A person imprisoned in any penal or correctional institution located in this state who takes, holds, carries away, decoys, entices away or secretes another person as a hostage by means of threats, coercion, intimidation or physical force is guilty of a felony and shall be imprisoned in the state prison for life, or any term of years, which shall be served as a consecutive sentence." MCLA 750.349a; MSA 28.581(1).

the present case, we are unable to conclude as a matter of law that the asportation would not support defendant's conviction for kidnapping.

A review of the record indicates that the victim was bound, gagged, and removed from the immediate vicinity of the road to preclude discovery of the escape while in progress. Without hesitation we can conclude that the purpose of this asportation was to facilitate the commission of the escape offense. The instant record discloses no such clarity with respect to the remaining element of the above standards. The totality of the evidence presented at trial created a close case upon the issue of whether the victim was removed from his environment and subjected to a substantially increased risk of harm by that movement. Unlike *Adams,* the substantial question regarding the sufficiency of the asportation created by this evidence precludes a finding as a matter of law that the challenged asportation possessed no independent significance.

In *People v Mobley, supra,* this writer relied upon footnote 37 of the *Adams* decision, citing California cases for the conclusion that where the movement *might* have significance independent of the underlying crime, a question of fact was presented for the jury.[3] Upon the present facts the jury was clearly presented with factual questions upon the elements of removal from the environment and increased risk. These factual questions were not presented to the jury below by the appropriate instruction that the asportation at issue must be found to possess significance independent of the escape offense before it would support a conviction for kidnapping.[4]

---

[3] *Accord, People v Iverson,* 26 Cal App 3d 598; 102 Cal Rptr 913 (1972).

[4] Subsequent to the writing of this opinion the Michigan Supreme

Like the *Mobley* panel, we are once again presented with the question of whether reversible error resulted from the trial judge's failure to give this type of jury instruction *sua sponte.* Defendant's failure to request this instruction does not relieve the trial judge of his duty to properly instruct the jury and the applicability of the *Adams* decision is not altered by the fact that it was decided subsequent to defendant's conviction. *People v Mobley, supra,* p 565. Unlike Mobley, defendant was prejudiced by the absent jury instructions. We cannot conclude that the jury, if properly instructed upon the asportation requirement, would have reached the same conclusion had this error not occurred.[5] Accordingly, defendant's conviction is reversed and the case remanded for a new trial.

Reversed and remanded.

All concurred.

---

Court rendered its opinion in *People v Adams,* 389 Mich 222 (1973). Although the Supreme Court altered the analytical criteria used to determine whether the asportation at issue was sufficient to support a conviction for kidnapping, it affirmed the approach taken in this opinion that such was a question of fact for the jury.

[5] *People v Iverson, supra,* p 919. *Cf. People v Moore,* 39 Mich App 329, 336 (1972), and *People v Sanders,* 43 Mich App 698, 709 (1972) (concurring opinion by Judge Bronson).