## PEOPLE v WORDEN

1. APPEAL AND ERROR—RECORD—SUPPLEMENTATION.

    A court record may not be supplemented on appeal by *ex parte* affidavits.

2. APPEAL AND ERROR—AFFIDAVITS—HEARSAY—AMENDMENT OF TRIAL TRANSCRIPTS.

    An *ex parte* affidavit does not fall within any of the recognized hearsay exceptions and is therefore inadmissible when offered at a formal court hearing for the amendment of a trial transcript.

3. EVIDENCE—WITNESSES—MEMORY REFRESHED—EVIDENCE IN WRITING.

    A witness may be cross-examined where his memory has been refreshed upon examination of a writing; if the witness's memory is not refreshed by perusal of a writing, the writing itself may be admitted after a proper foundation is laid.

4. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFRONTATION OF WITNESSES—EVIDENTIARY HEARINGS.

    An accused's right to confront witnesses against him is limited to criminal prosecutions; therefore, where the accused's criminal culpability has already been determined at a trial his right of confrontation does not extend to an evidentiary hearing to correct the transcript of the trial.

5. CRIMINAL LAW—PROSECUTORS—OFFENSES—CHARGES.

    Michigan precedent is directed to prohibiting an overzealous prosecutor from converting a single offense into two offenses,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 4 Am Jur 2d, Appeal and Error § 528.

[3] 81 Am Jur 2d, Witnesses § 462.

  Refreshment of recollection by use of memoranda or other writings. 82 ALR2d 473.

[4] 21 Am Jur 2d, Criminal Law § 339.

[5] 21 Am Jur 2d, Criminal Law §§ 128, 185.

[6, 7] 1 Am Jur 2d, Abduction and Kidnapping §§ 20, 21.

and it matters not whether the single offense is a minor misdemeanor or a capital felony.

6. KIDNAPPING—ASPORTATION—UNDERLYING CRIMES.

A factor to be considered in determining whether the movement of a victim was independent of the underlying crime in a trial where both an underlying crime and kidnapping are charged is whether the movement was for the purpose of facilitating the commission of the underlying offense.

7. KIDNAPPING—ASPORTATION—UNDERLYING CRIMES—RISK OF HARM.

One factor to be used in determining whether the movement of a victim was independent of the underlying crime where both an underlying crime and kidnapping are charged is whether such movement increased the risk of harm or the threatened risk of harm beyond the risk inherent in the underlying crime.

Appeal from Bay, Carl L. Horn, J. Submitted June 2, 1976, at Lansing. (Docket No. 21545.) Decided October 18, 1976.

Edgar D. Worden, Jr., was convicted of armed robbery and kidnapping. Defendant appeals the conviction of kidnapping. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene C. Penzien,* Prosecuting Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK, Jr., and E. H. PAPP,* JJ.

ALLEN, P. J. In this appeal defendant, found guilty as charged of armed robbery, MCLA 750.529; MSA 28.797, and kidnapping, MCLA 750.349; MSA 28.581, and sentenced to concurrent

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

terms of 20 to 40 years imprisonment, challenges the legality of his conviction of kidnapping.[1]

About 1:30 a.m. on the morning of May 19, 1973, defendant, driving his parents' automobile, pulled into a gasoline station located on Pinconning Road and the I-75 expressway in Bay County accompanied by one Barbara McDonald who thereupon left the car, entered the filling station and asked the attendant for directions to Mount Morris. While the attendant, Joseph Protasiewicz, was giving directions, defendant entered the station, pointed a gun at Protasiewicz and announced "this is a stick-up". Protasiewicz gave defendant a coin changer and money pouch. He then went to the safe which he opened and from which he withdrew a metal box, which he gave to defendant. At this point, still holding the gun, defendant informed Protasiewicz he had to be taken "for a ride down the road". Obediently, Protasiewicz entered the automobile, and sat on the front seat with Barbara between him and defendant driver. He was driven about a quarter of a mile down the road and released. Defendant and Barbara then drove by way of Pinconning to Au Gres where they registered in a motel and where later that morning they were found by state troopers. Upon being admitted into the motel room by the defendant, the state troopers found some $600 in coins and currency lying on and beneath the bed. Under the bed, the money pouch, money changer and two pistols were found. The trial court's findings of fact as first reported in the record clearly stated that the kidnapping charge contained in Count II "was

---

[1] Defendant also contends that should this Court reverse the conviction of kidnapping, defendant is entitled to resentencing on the armed robbery conviction since the kidnapping conviction aggravated the sentence imposed. In view of our decision affirming the kidnapping charge it is unnecessary to address this issue.

incidental" to the underlying armed robbery offense contained in Count I.[2] When appeal was first taken to this Court, plaintiff moved to remand, alleging that the word "not" was mistakenly omitted from the trial transcript. Plaintiff's motion was granted and at the hearing on remand October 24, 1975, an affidavit by the court reporter was admitted in evidence stating that the word "not" was mistakenly omitted from the trial transcript. The court reporter was not present at the hearing on remand and the reporter's notes were not offered in evidence.

I. *Did the trial court's consideration of a stenographer's affidavit at a hearing for the amendment of the trial transcript violate defendant's right to confront the witnesses against him, violate the best evidence rule and rules relating to refreshment of a witness's memory and the introduction of a past recollection recorded, and was the affidavit inadmissible hearsay?*

The question posed above compels a discussion of the proper procedure to be employed for correcting alleged errors in a trial transcript. Basically, the issue raised is whether a court reporter's *ex parte* affidavit may be used to make changes in the transcript. It is well settled that a record on appeal may not be *supplemented* by *ex parte* affidavits, *Dora v Lesinski,* 351 Mich 579; 88 NW2d 592 (1958). Does the otherwise inadmissible *ex*

---

[2] "I find also in this case that the offense, Count I, robbery armed, which was one offense, and then *kidnapping,* Count II, which was the other offense, *was incidental to the first offense.*

"So I believe that the People's finding of facts as to Count II, which has been presented to me, I would incorporate into my findings of fact, and I think that the People's findings of fact as to Count I, is a further summary of both my finding of facts to be." (Emphasis added.)

*parte* affidavit somehow attain dignity and become admissible because it is presented at a hearing? We think not. The affidavit, even though introduced at a formal court hearing, remains an out-of-court statement used to prove the truth of the matter asserted therein. As such it is hearsay not falling within any of the recognized exceptions to inadmissibility. In her affidavit, the court reporter stated that after examining her original notes and listening to a tape recording of the dictation she determined the word "not" had been omitted. If a witness's memory is refreshed upon examination of a writing, the witness may be cross-examined. If the witness's memory is not refreshed by perusal of a writing, the writing itself may be admitted after a proper foundation is laid. In the instant case neither the witness nor the writing (original notes) were available.[3]

Although the procedure employed was error and should be avoided in future cases where correction of a record is at issue, we find the error harmless. GCR 1963, 529.1, MCLA 769.26; MSA 28.1096. Our examination of the transcript of the hearing on the correction of the record discloses that the trial judge was less influenced by the stenographer's affidavit than he was by examination of his own notes and his own independent recollection. In ordering the amendment the trial judge expressly relied upon his own memory and notes.[4] It is

---

[3] Accused's right to confront witnesses against him is limited to criminal prosecutions. Accused's criminal culpability had already been determined at trial. Thus the constitutional right of confrontation was not violated at the evidentiary hearing correcting the transcript. Neither was the best evidence rule violated. This rule provides that where the contents of a writing are in dispute the writing itself must be introduced. However, at issue here was what the trial court said as to the service station attendant's asportation.

[4] "It was something I had to think about and as a trial judge without a jury if you want to, I guess, ask me anything about it, go ahead. I guess I'm the one that would have to repeat to you that as

totally obvious that in this case the court would have arrived at the same conclusion even if the stenographer had been present and even if the original notes had been available for examination. Such being the case we cannot say that admission of the affidavit was prejudicial.

II. *Did the trial court err in finding that the movement of the filling station attendant was not merely incidental to the underlying crime of armed robbery but was independently significant thus allowing defendant to be convicted of both armed robbery and kidnapping?*

In this superbly briefed and argued cause the parties sharply disagree whether the record contains sufficient evidence of asportation as defined in *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973), to justify the conviction of kidnapping. Defendant contends that the only evidence of asportation was the movement of Protasiewicz a mere quarter of a mile while defendant and Miss McDonald were engaged in the "getaway" phase of the robbery. This, says defendant, was action taken to effect an escape from the scene of the robbery and for no other reason. Consequently, defendant concludes, the prosecution failed to

---

far as I'm concerned, I did consider, myself, what the findings of facts would be, and I felt that the People's proposed findings of the fact were such that I could adopt them.

\* \* \*

" \* \* \* Mr. Lydick, I'm going to reaffirm the findings of fact. And it's my statement to you today that I did very carefully review this thing before I made my findings of fact, and I know how important it is, but I can only say to you today that I rehashed it in my mind again and still I don't think that I did that in the sense of just briefly looking it over. I realize my responsibility.

"I was like a juror in this case, so I am just stating as far as Mr. Penzien's motion is concerned, that I'm going to again state that as far as I'm concerned, I was fully aware of findings of fact on the kidnapping."

show that a movement of the attendant—the controlling element of a kidnapping charge—was conduct unrelated to the armed robbery. Defendant rejects the argument that the *Adams* opinion applies only to situations where the alleged kidnapping occurs in conjunction with a lesser crime rather than in conjunction with another capital offense, as in the instant case.[5] Calling attention to California decisions, particularly *People v Beaumaster,* 17 Cal App 3d 996; 95 Cal Rptr 360 (1971),[6] defendant contends that the threat of additional danger to the victim by reason of the asportation is not sufficient proof by itself of kidnapping. Conversely, the people argue: (1) *Adams* does not, or at least should not, control where, as here, the underlying offense carries a life maximum sentence thus precluding an overzealous prosecutor from converting a lesser underlying crime into a more serious crime; (2) since the robbery was totally completed and defendant in possession of the money and valuables when at gunpoint the attendant was asported away, the movement was independent of the underlying crime; (3) in Michigan, movement of a victim is "independent" if, as in the instant case, it enhances the risk or danger to the person being moved.

We reject the first of the three arguments advanced by the people. While it is true that the *Adams* Court was concerned with the conversion of a simple crime into a capital offense, the logic of the opinion goes further and is directed to prohib-

[5] Both armed robbery, MCLA 750.529; MSA 28.797, and kidnapping, MCLA 750.349; MSA 28.581, carry maximum sentences of life imprisonment.

[6] "The nature of the crime also is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot. Thus, the crime of robbery is not complete until the robber has won his way to a place of temporary safety." *Beaumaster, supra,* at 1004.

iting the conversion of a single offense into two offenses. Thus it matters not whether the single offense is a minor misdemeanor such as simple assault or a capital felony such as armed robbery. If *Adams* did not extend to situations involving co-equal offenses, reversal and remand for failure to properly instruct on asportation would not have been ordered by this Court in *People v Ford,* 47 Mich App 420; 209 NW2d 507 (1973), involving rape and kidnapping, *People v Leszczynski,* 49 Mich App 555; 212 NW2d 255 (1973), involving kidnapping and armed robbery, *People v Behm,* 52 Mich App 119; 216 NW2d 631 (1974), involving kidnapping and armed robbery, *People v Culpepper,* 52 Mich App 121; 216 NW2d 632 (1974), involving kidnapping and armed robbery. The fact that this Court did reverse and remand in each of these cases evinces the applicability of *Adams* in the instant situation.[7]

Nevertheless, we accept and are persuaded by the remaining two arguments advanced by the prosecution. One factor which may be considered in determining whether the victim's movement is independent of the underlying crime is whether the movement was "for the purpose of facilitating the commission of the underlying offense". *People v Nash,* 47 Mich App 371, 376; 209 NW2d 432 (1973).[8] At the time Protasiewicz was ordered into

[7] *But see People v Hardesty,* 67 Mich App 376, 378; 241 NW2d 214 (1976), which takes a contrary position, the Court saying:

"At the time of the commission of the kidnapping, both rape, MCLA 750.520; MSA 28.788, and kidnapping, MCLA 750.349; MSA 28.581, authorized a maximum penalty of life in prison. The rationale for the rule is inapplicable to this case because this is not an attempt by a prosecutor to overcharge or to grossly distort a lesser crime into a more serious charge."

[8] Although *People v Nash, supra,* was written prior to the Supreme Court decision in *People v Adams, supra,* nothing in *Adams* rejected or discounted the test of whether the victim's movement enhanced or facilitated the commission of the underlying crime.

the car defendant and Miss McDonald had obtained all of the money and valuables from the attendant. The movement of defendant down the road in no way facilitated the commission of the underlying offense. The armed robbery was completed.

The prosecution's third argument is its best one. Regardless of California decisions, including *Beaumaster, supra*,[9] *Adams* itself holds that one factor to be used in determining whether a victim's movement is independent is whether the movement increased the risk of harm or the threatened risk of harm beyond the risk inherent in the underlying crime.

"4. If the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the necessary legal asportation, but there could be asportation without this element of additional danger so long as the movement was incidental to a kidnapping and not a lesser crime." *Adams, supra,* at 238.

In each of three recent cases, where the victim was forced into defendant's car, driven some distance and a robbery or rape was then committed, this Court, relying upon the fact that moving the victim to a secluded spot increased the danger to the victim, held the movement was not merely incidental to the other crime charged. *People v Keeth,* 63 Mich App 589, 593; 234 NW2d 717 (1975), *People v Baker,* 60 Mich App 309, 312; 230 NW2d 409 (1975), *People v Hardesty,* 67 Mich App

---

[9] We find *Beaumaster* inapplicable since, there, defendant was not charged, as here, with simple kidnapping but was charged with "kidnapping for the purpose of robbery". Since Beaumaster forced her at knifepoint to get into his car where she was driven some distance and sexually assaulted, Beaumaster claimed the robbery was completed before the asportation occurred. However, the court found there was a kidnapping as charged.

376, 379; 241 NW2d 214 (1976).[10] Here, the record is clear that although Protasiewicz was asported a shorter distance and confined in the car for a lesser period of time than the victims in *Keeth, Baker* and *Hardesty, supra,* both the threat and the risk of harm to him were increased by defendant's conduct. The robbery occurred in the lonely early morning hours. When forced at gunpoint into the car, Protasiewicz was not informed by his abductors that he would be driven but a short distance and quickly released. Though there were some houses in the area where Protasiewicz was released, there were no street lights. In the highest probability he may well have believed it was his last ride. Were this Court to hold that such conduct under such circumstances is merely incidental, we would not only be allowing criminal conduct to go unpunished, we would actually be encouraging such conduct. The law is not so foolish.

Affirmed.

---

[10] "At the scene of the rape any of the assailants could have decided to do even greater bodily harm or to kill the complainant for fear of future identification. We hold that the movement of the complainant to a secluded area more than seven miles from the point of abduction added a greater danger or threat to the complainant beyond that inherent in the crime of rape. This justified a finding by the trial court of legal asportation to support a separate and distinct charge of kidnapping." *Hardesty, supra,* at 379.