PEOPLE v ROGER HARRIS

1. KIDNAPPING—ARMED ROBBERY—ASPORTATION—HOSTAGE—INDEPEN-
   DENT SIGNIFICANCE.
   Asportation of a hostage in an armed robbery-kidnap case has
   independent significance when it occurs after the robbery has
   been completed.

2. KIDNAPPING—ASPORTATION—UNDERLYING CRIME—RISK OF HARM.
   One factor to be used in determining whether the movement of a
   victim was independent of the underlying crime where both an
   underlying crime and kidnapping are charged is whether such
   movement increased the risk of harm or the threatened risk of
   harm beyond the risk inherent in the underlying crime.

3. KIDNAPPING—ASPORTATION—INSTRUCTIONS TO JURY—UNDERLYING
   CRIME.
   A jury in a kidnapping case, as a general rule, should be charged
   that the offense of kidnapping does not occur unless the move-
   ment of the victim is not merely incidental to an underlying
   crime.

4. KIDNAPPING—INSTRUCTIONS TO JURY—ARMED ROBBERY—MICHIGAN
   CRIMINAL JURY INSTRUCTIONS—ASPORTATION—APPEAL AND ER-
   ROR.
   An instruction to a jury on the offense of kidnapping, at a
   defendant's trial for armed robbery and kidnapping, which was
   identical to the Michigan Criminal Jury Instructions except
   that the judge added four words, "during the armed robbery",
   to the portion of the instruction dealing with the necessary
   element of asportation did not constitute reversible error where
   the instructions as given told the jury that it could convict of
   kidnapping if it found that the underlying crime involved

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 11, 12.
   Seizure or detention for purpose of committing rape, robbery, or
   similar offense as constituting separate crime of kidnapping. 43
   ALR3d 699.
[4] 1 Am Jur 2d, Abduction and Kidnapping §§ 11–23.
[5] 75 Am Jur 2d, Trial §§ 604, 605.

taking a hostage *and* if it found movement for the purpose of abduction.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—ENTIRETY OF INSTRUCTIONS —PREJUDICE—APPEAL AND ERROR.

Jury instructions in criminal cases must be read in their entirety to determine whether prejudicial error exists.

Appeal from Oakland, Frederick C. Ziem, J. Submitted October 13, 1977, at Lansing. (Docket No. 30832.) Decided December 5, 1977.

Roger L. Harris was convicted of armed robbery and kidnapping. Defendant appeals from the conviction of kidnapping only. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Edward J. Soma,* for defendant.

Before: DANHOF, C. J., and ALLEN and H. L. HEADING,* JJ.

ALLEN, J. Where, in the course of robbery armed, an employee is taken hostage, is error committed by giving Michigan Criminal Jury Instruction 19:1:02, as it interprets *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973)? This question comes to us on defendant's appeal of right following a conviction by jury of armed robbery, MCLA 750. 529; MSA 28.797, and kidnapping, MCLA 750.349; MSA 28.581. Sentenced to concurrent terms of imprisonment of not less than 12 years nor more than 40 years, defendant appeals from the conviction of kidnapping only.

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

About 7 p.m., on December 15, 1975, Ms. Moore, an employee of the Chatham Food Store at the Tel-Twelve Mall in Southfield, was eating lunch in the store office with the assistant store manager. Hearing what sounded like a gunshot she rose and saw defendant standing in one of the store aisles brandishing a pistol. Whereupon defendant ordered the assistant manager out of the office, pointed a pistol at the manager's head and ordered Ms. Moore to empty the contents of the safe into a purse. While removing the money from the safe Ms. Moore pulled a switch activating a camera. After receiving the contents of the safe, defendant took hold of Ms. Moore, left the office and ordered one of the checkout clerks to proceed to each checkout counter and empty their contents into a bag. This money, along with the money from the safe, was dumped into a wastebasket. When all the money had been collected, defendant said to Ms. Moore, " 'You're coming with me' ", grabbed her by the collar or hair and, with gun pointed at her head, pushed her toward the store exit, dragging the wastebasket filled with money with his other hand.

Once outside, the two started down the sidewalk at the side of the store with defendant still holding his victim with the gun pointed at her head. As they crossed to the parking lot, police were observed pulling into the parking lot. Upon seeing the officers defendant ordered Ms. Moore to place her hands over her head so that the police would know that defendant had custody of her. Ms. Moore complied with the order and the two continued to cross the driveway to a parked automobile —a distance of some 150 feet. There, defendant pulled Ms. Moore down with him beside one of the parked cars. The police followed calling to the

defendant to give up since he was surrounded. Within a few minutes either Ms. Moore grabbed the gun from the defendant or the defendant voluntarily gave her the gun, and the police moved in, recovering the wastebasket containing approximately $7,000.

On appeal to us, defendant raises two questions: (1) Were the trial court's instructions on the charge of kidnapping, particularly on the element of asportation, in compliance with the rules laid down in *People v Adams, supra,* and (2) was the evidence presented at trial sufficient to permit the jury to make a finding of guilt on the charge of kidnapping? We will consider the questions in the reverse order in which they are presented.

The record is clear—in fact undisputed—that defendant took Ms. Moore against her will and at gunpoint into the parking lot after all of the cash had been collected and the robbery completed. *People v Worden,* 71 Mich App 507; 248 NW2d 597 (1976), holds that asportation has independent significance when it occurs after a robbery has been completed. There, the defendant, after robbing a gasoline station and collecting money from the cash register, informed the attendant he was to be taken "for a ride down the road". The attendant was driven a quarter of a mile down the road and released. Defendant appealed from the conviction of kidnapping, alleging that the movement of the attendant was incidental to the commission of the robbery. This is the same defense raised in the present case. Our Court rejected the argument, saying:

"*Adams* itself holds that one factor to be used in determining whether a victim's movement is independent is whether the movement increased the risk of

harm or the threatened risk of harm beyond the risk inherent in the underlying crime.

\* \* \*

"In each of the three recent cases, where the victim was forced into defendant's car, driven some distance and a robbery or rape was then committed, this Court, relying upon the fact that moving the victim to a secluded spot increased the danger to the victim, held the movement was not merely incidental to the other crimes charged. \* \* \* Here, the record is clear that although Protasiewicz was asported a shorter distance and confined in the car for a lesser period of time than the victims in *Keeth, Baker* and *Hardesty, supra,* both the threat and the risk of harm to him were increased by defendant's conduct. The robbery occurred in the lonely early morning hours. When forced at gunpoint into the car, Protasiewicz was not informed by his abductors that he would be driven but a short distance and quickly released. Though there were some houses in the area where Protasiewicz was released, there were no street lights. In the highest probability he may well have believed it was his last ride. Were this Court to hold that such conduct under such circumstances is merely incidental, we would not only be allowing criminal conduct to go unpunished, we would actually be encouraging such conduct. The law is not so foolish." (Citations omitted.) *Worden, supra,* at 515–516.

Although Ms. Moore's asportation was but some 150 feet—substantially less than the attendant's "ride down the road" in *Worden, supra,* the danger to the victim was even greater. Defendant did not release Ms. Moore when he first observed the police. He continued to hold her as a hostage as his security to avoid capture. Miraculously, a shoot-out, which might have wounded Ms. Moore, was avoided. Clearly, *Worden, supra,* is authority for rejecting defendant's claim that the evidence was insufficient to support a conviction on kidnapping.

The propriety of the jury instructions given by the court on the kidnapping count presents a difficult and complicated question. In his charge to the jury the trial judge gave the following instruction concerning kidnapping.

"First, the victim, Barbara Ann Moore, must have been forcibly confined or imprisoned.

"Secondly, the victim must have been so confined or imprisoned against her will, and without lawful authority.

"Third, during the course of such confinement the Defendant must have forcibly moved the victim or caused her to be moved from one place to another for the purpose of abduction and kidnapping. If the evidence convinces you beyond a reasonable doubt that there was movement, and that it was either for the purpose of abduction of the victim or to take the victim as a hostage *during the armed robbery,* this is sufficient for this element of the crime.

"Fourth, at the time of such confinement the Defendant must have intended to so kidnap the victim.

"Fifth, at the time of such confinement the Defendant must have acted willfully and maliciously.

"Willfully and maliciously means that the Defendant intentionally confined the victim, knowing such confinement to be wrong and he did so without legal justification or excuse." (Emphasis supplied.)

Except for the four words underscored above, the instruction delivered by the trial court is identical to Michigan Criminal Jury Instruction (MCJI) 19:1:02.[1] After the jury was removed from the

---

[1] "(2) First, the victim, _____, must have been forcibly confined or imprisoned.

"(3) Second, the victim must have been so confined or imprisoned against his will and without lawful authority. (Footnote omitted.)

"(4) Third, during the course of such confinement the defendant must have forcibly moved the victim or caused him to be moved from one place to another for the purpose of abduction and kidnapping. If the evidence convinced you beyond a reasonable doubt that there was movement and that it was either for the purpose of abduction of the

courtroom the trial court asked if either side requested changes in the charge. Defendant's counsel responded by requesting clarification of that portion of the kidnapping charge pertaining to asportation. Specifically, counsel asked the following:

"MR. SOMA: For the record, Your Honor, I would request the Court further instruct the Jury along the lines of People versus Adams, which is at 389 Michigan 22[2], specifically page 238, wherein the Court suggests the considerations and factors that are to be made in determining whether there has been a 'independent action to cover the crime of kidnapping'. There are specifically six considerations the Supreme Court has outlined, and I would request the Court expand its past instructions to include some of that."

This request was denied.

Within a short time the jury foreman sent a note to the trial judge reading "Explain the points of law for kidnapping". The jury was then reconvened and, over objection from defense counsel who repeated the same objection first made, the trial court read verbatim the charge on kidnapping as first given by the court. At 4:30 p.m. the jury was reconvened and, following discussions whether they should return the next day (Wednesday) or Thursday, was dismissed until Thursday. However, during the discussions the jury foreman asked that the kidnapping charge be again explained. On Thursday morning, defense counsel requested that the court give an instruction similar to the trial court's additional instruction on kidnapping approved in *People v Widgren,* 53

victim or to [murder the victim/extort money or other valuables from the victim/take the victim as a hostage/*(state other capital offense)]* this is sufficient for this element of the crime."

Mich App 375, 383; 220 NW2d 130 (1974).[2] Again
the trial court ruled against the defense and re-
peated the same instructions given the first and
second times. After further deliberation the jury
returned a verdict of guilty on both counts.

In *People v Adams, supra,* the Supreme Court
held that since most underlying offenses involving
a person contain some element of temporary or
short confinement or forced movement and, in
order to avoid the unconscionable result of permit-
ting prosecutors to convert a single offense into
two offenses, a jury should be charged—with cer-
tain exceptions hereinafter noted—that the offense
of kidnapping does not occur unless the movement
of the victim is not merely incidental to the com-
mission of the underlying crime. It was in re-
sponse to this holding that the charge, albeit in
somewhat abbreviated form, was approved in *Peo-
ple v Widgren, supra,* and was developed and
appears in more detailed language in MCJI
19:1:01. On the first occasion, defense counsel did
not set forth the precise language of his requested
instruction. But the record is clear that he was
asking the court to give a 19:1:01 charge. Instead,
the trial court opted to give, with the four-word
modification, the 19:1:02 type charge.

The *Adams* opinion made at least four factual
situations in which it would not be necessary to
instruct the jury that the movement element must
not be merely incidental to the commission of the
underlying crime.

"2. The movement element is not sufficient if it is

---

[2] " 'Further, I charge you any assault or crime, such as rape,
involves some confinement, and the mere movement of the victim
does not constitute kidnapping under the statute unless such move-
ment substantially increases the risk of harm to the victim above and
beyond and independent of the intended crime, which is assault.' "

'merely incidental' to the commission of another under-lying *lesser* crime.

"3. If the underlying crime involves murder, extortion or taking a hostage, movement incidental thereto is generally sufficient to establish a valid statutory kidnapping." *Adams, supra,* p 238. (Emphasis supplied.)

Situation "2" appears to state that where the underlying offense is co-equal in degree, *viz:* —a capital offense, *Adams* is inapplicable. Situation "3" carves out exceptions where the offense involves murder, extortion or the taking of a hostage. MCJI 19:01:02 is the Michigan Bar Association's response to the four exceptions noted above.

In the instant case the trial court did not posit its denial of defendant's request for instructions on the rationale that the underlying offense was another capital offense. Instead, the trial court denied the request on the "taking of a hostage" language found in situation "3" quoted above. We have already ruled that the evidence undeniably discloses that Ms. Moore was taken as a hostage after the robbery was completed. It follows that MCJI 19:1:02 would be a proper instruction and defendant's request for further instructions would be properly deniable under MCJI 19:1:02 as written had the court not made the four-word modification. The problem arises because the trial court added the qualifying language "during the armed robbery". Literally construed, the judge informed the jury that kidnapping could be supported if the purpose of the movement was to take the victim as a hostage during the armed robbery. There is ambiguity in the Supreme Court's language "if the underlying crime involves * * * taking a hostage". Did the Supreme Court intend "hostage" to mean as little as holding a person in restraint while the underlying offense occurred? Or did it intend that

hostage mean the asportation of a person in a getaway attempt or an attempt to avoid capture after the underlying offense was completed? Under either interpretation we find no reversible error in this case; if there was error, for multiple reasons, we find the error harmless.

*First,* and most significantly, no miscarriage of justice occurred. The evidence is overwhelming that after the robbery was completed, the victim was held at gunpoint in an attempted getaway. Further, the evidence is overwhelming that the victim was exposed to danger over and beyond the danger to herself during the robbery itself. *Adams, supra,* explicitly states that where the movement adds a greater danger or even the threat thereof, it is a factor to be considered in determining whether there was kidnapping. *Worden, supra,* holds that where this occurs, such conduct is not merely incidental to the underlying offense. *Second,* the jury may well have concluded that the trial court's words "during the armed robbery" meant during the whole episode which climaxed in defendant's capture in the parking lot. To a lay jury, an armed robbery is the total sequence of the events occurring at the site of the offense. If this be so, then no prejudicial error occurred, since the jury would have found that the victim was taken as a hostage after the money was collected. *Third,* assuming, *arguendo,* that the jury construed the offending language "during the armed robbery" to include only that period of time during which the victim was held at gunpoint inside the store, paragraph four of the disputed instructions[3] mandated a finding by the jury that at the time of confinement the defendant intended to kidnap the victim.

---

[3] "Fourth, at the time of such confinement the Defendant must have intended to so kidnap the victim."

Thus, the jury was asked to make a finding of kidnapping. In criminal cases, instructions must be read in their entirety to determine whether prejudicial error exists. *People v Parsons,* 59 Mich App 79, 86; 228 NW2d 852 (1975). The instructions as given told the jury that it could convict of kidnapping if it found that the underlying crime involved taking a hostage *and* if it found movement for the purpose of abduction. This satisfies the requirements of *Adams, supra.*

Affirmed.