PEOPLE v FRIDAY

Docket No. 46194. Submitted May 7, 1980, at Lansing.—Decided July
2, 1980. Leave to appeal applied for.

Johnny Friday was convicted of armed robbery and kidnapping
following a nonjury trial before the Monroe Circuit Court,
William J. Weipert, Jr., J. Evidence was presented at trial
which showed that defendant forced the victim at gunpoint to
enter the victim's truck and ordered the victim to drive defen-
dant to Detroit, which was 45 miles away. Shortly after enter-
ing the truck, defendant demanded the victim's money. After
taking the victim's money, the defendant ordered the victim to
continue to drive the defendant the remaining 40 miles to
downtown Detroit. Defendant testified that the trip to Detroit
was part of a con game which he was perpetrating upon the
victim and that no gun was used as part of the illegal con game
scheme. Defendant appeals. *Held:*

1. The rule that movement of a victim which is merely
incidental to the commission of an underlying lesser offense is
insufficient to satisfy the asportation element of kidnapping is
also applicable to the situation, as here, where the underlying
offense is equal to kidnapping. Here, however, the asportation
of the victim was not merely incidental to the armed robbery in
that the confinement and movement of the victim continued
long after the completion of the armed robbery and clearly
increased the risk of harm to the victim beyond that incident to
the armed robbery alone. The evidence was sufficient to estab-
lish the asportation element of kidnapping.

2. While the trial court's findings of fact were abbreviated,
remand for elaboration of those findings of fact is not neces-
sary, since such remand would serve no useful purpose.

3. There was no abuse of discretion on the part of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 1 Am Jur 3d, Abduction and Kidnapping §§ 11, 12.
Seizure or detention for purpose of committing rape, robbery, or
similar offense as constituting separate crime of kidnapping. 43
ALR3d 699.

[2] 1 Am Jur 2d, Abduction and Kidnapping § 30.

[3] 5 Am Jur 2d, Appeal and Error § 974.

[4] 29 Am Jur 2d, Evidence §§ 831, 831.5.

prosecutor by his refusal to administer a polygraph examination as requested by the defendant. The prosecutor has no obligation to consent to such a request. Further, in view of defendant's criminal background, any polygraph examination results would have been of questionable reliability and, indeed, would have been highly suspect.

Affirmed.

1. KIDNAPPING — ASPORTATION — OTHER OFFENSES — INCIDENTAL MOVEMENT.

The rule that movement of a victim which is merely incidental to the commission of an underlying lesser offense is insufficient to satisfy the asportation element of kidnapping is applicable in a case where the underlying offense is equal to kidnapping.

2. KIDNAPPING — ASPORTATION — ARMED ROBBERY — INCIDENTAL MOVEMENT.

The asportation necessary to establish kidnapping is sufficiently proven where the proofs show that the confinement and movement of the victim continued long after the completion of an armed robbery and that such further confinement clearly increased the risk of harm to the victim beyond that incident to the armed robbery.

3. COURTS — FINDINGS OF FACT — REMAND.

Remand to the trial court for elaboration of its abbreviated findings of fact is not mandated where such remand would serve no useful purpose.

4. CRIMINAL LAW — PROSECUTING ATTORNEYS — POLYGRAPH EXAMINATION — ABUSE OF DISCRETION.

An abuse of prosecutorial discretion is not established where the prosecutor refuses to administer a requested polygraph examination where, because of the defendant's background, any polygraph results might have been highly suspect; the prosecutor, in any event, is under no obligation to consent to a request for a polygraph examination.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *James G. Petrangelo,* Assistant Prosecuting Attorney, for the people.

*Gail Rodwan,* Assistant State Appellate Defender, for defendant on appeal.

Before: Cynar, P.J., and M. J. Kelly and T. Gillespie,* JJ.

M. J. Kelly, J. After a bench trial, the defendant was convicted of armed robbery, contrary to MCL 750.529; MSA 28.797, and kidnapping, contrary to MCL 750.349; MSA 28.581. He was sentenced to two concurrent terms of imprisonment of 10 to 20 years. Defendant appeals as of right.

The trial testimony of the complaining witness established that the defendant approached the complainant at a highway rest stop, placed a gun in his back and ordered him to get into his truck. Once inside, the defendant demanded that complainant drive to Detroit. The defendant sat with a gun in his lap during the ride and, after approximately five minutes had elapsed, he demanded the complainant's money. He took approximately $260 from the complainant's wallet. Forty minutes and 40 miles later, they reached downtown Detroit, where the defendant exited from the truck.

The defendant did not deny his presence at the truck stop, but he did offer a different version of the events. The 24-year-old defendant, who had been a heroin addict for ten years, testified that he had been playing "Murphy" con games on truck drivers for the past eight years and that he had been doing the same with the complainant. The confidence scheme involved enticing drivers to pay him for goods such as television sets and radios that he could obtain for them at a substantially reduced price. The defendant would then take their money and inform them that he was required to travel to a different location to retrieve the goods. He would then leave and never return. The defendant claimed that he was riding to De-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

troit with the complainant in order to obtain the goods that he had already sold to a number of truck drivers, including the complaining witness. In order to establish defendant's consistent method of operation, the defense offered evidence of a number of his previous convictions and arrests, all arising out of the same type of activities. The defendant denied ever having used a gun in any of his illegal schemes.

On appeal defendant urges reversal of his kidnapping conviction on the ground that the evidence was insufficient to prove the essential element of asportation independent of confinement and movement incidental to commission of the armed robbery. In advancing this position defendant relies heavily on *People v Adams,* 389 Mich 222, 238; 205 NW2d 415 (1973), in which the Supreme Court enunciated the following guidelines for evaluation of evidence pertinent to the asportation element of kidnapping:

"2. The movement element is not sufficient if it is 'merely incidental' to the commission of another underlying lesser crime.

\* \* \*

"4. If the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the necessary legal asportation, but there could be asportation without this element of additional danger so long as the movement was incidental to a kidnapping and not a lesser crime.

"5. Where appropriate, secret confinement or some other nonmovement factor may supply a necessary alternative to asportation to complete statutory kidnapping.

"6. Whether or not a particular movement constitutes statutory asportation or whether there is an appropriate alternative element must be determined from all

the circumstances under the standards set out above and is a question of fact for the jury."

Although the decision is framed in terms of the underlying offense being a "lesser" crime, there is currently a split of authority regarding the applicability of the *Adams* criteria to cases involving coequal offenses. Compare *People v Hardesty,* 67 Mich App 376; 241 NW2d 214 (1976), *lv den* 397 Mich 875 (1976), with *People v Worden,* 71 Mich App 507; 248 NW2d 597 (1976), and *People v Barker,* 90 Mich App 151; 282 NW2d 266 (1979), *lv gtd* 407 Mich 902 (1979). We agree with Judge RILEY's conclusion in *Barker, supra,* 156, that "those decisions holding *Adams* applicable to coequal offenses represent the better reasoned approach".

Our review of the evidence in the instant case convinces us that the movement of the victim was incidental to kidnapping rather than to the armed robbery. Defendant forced the complainant into the truck at gunpoint and ordered him to drive to Detroit. After traveling approximately five minutes, defendant demanded that the driver turn over the money in his wallet. Although the robbery was complete at that point, the driver proceeded another 40 miles to downtown Detroit at the direction of defendant, who continued to hold the gun in his lap. The underlying offense was substantially facilitated by the confinement; however, the additional distance traveled and the time that elapsed subsequent to its completion were not arguably incidental to it. Rather, the continued confinement and movement were necessary to effect a kidnapping. Furthermore, the duration of the 45-mile trip to Detroit at gunpoint clearly increased the risk of harm to the victim beyond that incident to the armed robbery. See *People v*

*Baker,* 60 Mich App 309, 312; 230 NW2d 409 (1975).

Defendant's additional contentions do not require extensive discussion. The trial court's findings of fact, while abbreviated, do not necessitate remand, since no useful purpose would be served. *People v Jackson,* 81 Mich App 18; 264 NW2d 101 (1978).

Defendant's claim that the prosecutor abused his discretion in refusing to administer the requested polygraph examination is without merit. Although the polygraph has been increasingly recognized as a useful investigative device, a prosecutor is under no obligation to administer such an examination, the results of which are inadmissible as evidence. See *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977). A prosecutor who agrees to the administering of a polygraph examination and to a dismissal of charges if defendant passes the examination in exchange for defendant's plea of guilty should the defendant fail the examination is bound to uphold the bargain even if it is subsequently determined that the examination may have been unreliable. *People v Reagan,* 395 Mich 306; 235 NW2d 581 (1975), and cases cited therein. The reliability of the test results diminishes when the subject has an extensive criminal background as noted in *Barbara, supra,* 398:

"Thus, even proponents of the device agree:

" '[T]he polygraph will not detect the witness who makes honest misstatements of fact, and it may not detect the hardened individual who recognizes no responsibility to conform to moral codes or standards of the community.' Richardson, Modern Scientific Evidence (2d ed), § 10.3, p 310."

Since the defendant herein admitted that he had

been a career criminal all his adult life, the results of a polygraph might have been highly suspect.

Moreover, the complainant's version of the events was bolstered by another witness who claimed to have been victimized in an almost identical manner by the defendant. In light of the strong evidence against the defendant, the questionable value of a polygraph examination in his particular case, and the fact that, in any event, the prosecutor is under no obligation to consent to such a request, we reject defendant's claim of prosecutorial abuse of discretion.

Affirmed.