PEOPLE v PEETE

Docket No. 45342. Submitted May 8, 1980, at Detroit.—Decided
November 21, 1980. Leave to appeal applied for.

Lad D. Peete was convicted, on his plea of guilty, of two counts of
first-degree criminal sexual conduct, one count of unarmed
robbery, and one count of breaking and entering with intent to
commit larceny and was sentenced in accord with a plea-bar-
gain agreement, Wayne Circuit Court, Theodore R. Bohn, J. He
appeals, alleging that his plea-bargain agreement was illusory
and that he was impermissibly placed in double jeopardy. *Held:*

1. Although defendant did not receive a sentence benefit from
his plea-bargain agreement, valuable consideration flowed to
him from the agreement to dismiss the charges of unarmed
robbery and kidnapping which arose out of a separate transac-
tion. The record shows that defendant was advised of and
understood all of the consequences of his plea-bargain agree-
ment. The plea was valid.

2. Defendant's movement of his victim was incidental to the
first-degree criminal sexual conduct and did not provide the
asportation necessary to sustain a charge of kidnapping.

3. Defendant's conviction for unarmed robbery is impermissi-
ble since the acts which constituted that felony were used

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21 Am Jur 2d, Criminal Law §§ 485-489, 491.5.
   Court's duty to advise or admonish accused as to consequences of
   plea of guilty, or to determine that he is advised thereof. 97
   ALR2d 549.
[4] 21 Am Jur 2d, Criminal Law §§ 546, 547.
   Propriety of general sentence covering several counts in informa-
   tion or indictment not exceeding in aggregate the sentences
   which might have been imposed cumulatively under the several
   counts. 91 ALR2d 511.
[5] 65 Am Jur 2d, Rape § 41.
[6] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 11-18.
   Seizure or detention for purpose of committing rape, robbery, or
   similar offense as constituting separate time of kidnapping. 43
   ALR3d 699.
[7] 21 Am Jur 2d, Criminal Law § 166.

evidentially as one element of first-degree criminal sexual conduct. Therefore, the unarmed robbery conviction is vacated.

4. Defendant's conviction for first-degree criminal sexual conduct is affirmed.

5. Defendant's conviction for breaking and entering is affirmed.

Affirmed in part, reversed in part.

1. CRIMINAL LAW — GUILTY PLEAS — PLEA-BARGAIN AGREEMENTS — VOLUNTARINESS.

The voluntariness of a plea entered pursuant to a plea-bargain agreement depends upon a defendant's knowledge of the actual value of the bargain.

2. CRIMINAL LAW — GUILTY PLEAS — PLEA-BARGAIN AGREEMENTS — STANDARD OF REVIEW.

A plea entered pursuant to a plea-bargain agreement will be upheld on appeal where the value of the bargain is genuine, valid, and known to a defendant or where the facts in a case indicate that a plea was voluntarily made, whether or not the defendant received consideration in return.

3. CRIMINAL LAW — GUILTY PLEAS — PLEA-BARGAIN AGREEMENTS — CONSIDERATION — VALIDITY.

Sentence consequences are not the only benefits that may be received as a result of plea bargaining, and a plea made pursuant to a plea-bargain agreement should not be invalidated solely because a defendant has received reduced, little, or no consideration from a promise made by a prosecutor.

4. CRIMINAL LAW — SINGLE CRIMINAL TRANSACTIONS — MULTIPLE OFFENSES.

In a criminal action, doubt in fixing punishment for a criminal offense should be resolved against turning a single transaction into multiple offenses.

5. CRIMINAL LAW — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — UNDERLYING FELONIES — CONVICTIONS — STATUTES.

Use of an underlying felony as evidence of one element of first-degree criminal sexual conduct renders impermissible a conviction for the underlying felony (MCL 750.520b; MSA 28.788[2]).

6. CRIMINAL LAW — KIDNAPPING — ASPORTATION — UNDERLYING FELONIES.

A trial court, in determining whether the asportation requirement of kidnapping has been established, should consider whether the movement element was merely incidental to commission of another underlying lesser crime and whether the

movement added either a greater danger or threat thereof to the victim, but movement incidental to the kidnapping could constitute asportation without the element of additional danger.

7. CONSTITUTIONAL LAW — CRIMINAL LAW — DOUBLE JEOPARDY.
   No person shall be subject for the same offense to be twice put in jeopardy (US Const, Am V, Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Michael Lehto,* Assistant Prosecuting Attorney, for the people.

*R. Steven Whalen,* Assistant State Appellate Defender, for defendant on appeal.

Before: BEASLEY, P.J., and M. F. CAVANAGH and W. A. PORTER,* JJ.

PER CURIAM. On March 7, 1979, defendant plead guilty to two counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), one count of unarmed robbery, MCL 750.530; MSA 28.798, and one count of breaking and entering with intent to commit larceny, MCL 750.110; MSA 28.305. He received an agreed-upon life sentence for each of the criminal sexual conduct convictions and a 10-to-15-year sentence on each of the other two counts. Defendant appeals as of right, raising two issues.

First, defendant contends his plea-bargain agreement was illusory. Defendant was originally charged in a six-count information for offenses committed on December 1, 1978. Counts I and II alleged two acts of sexual penetration that occurred under circumstances involving an unspeci-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fied other felony. Counts III and IV involved the same two acts of penetration but alleged the alternative statutory ground that these acts were committed while being aided or abetted by one or more other persons and while using force or coercion. Counts V and VI alleged unarmed robbery and breaking and entering an unoccupied dwelling with intent to commit larceny.

The plea-bargain agreement incorporated five considerations, some of which related to other offenses with which defendant was also charged. Defendant agreed to plead guilty to Counts I, II, V and VI, with a further sentence agreement that he would receive life sentences on Counts I and II, and a 15-year maximum sentence for Counts V and VI. Counts III and IV were dropped pursuant to the agreement. The defendant also agreed to plead guilty to a reduced charge of second-degree murder in another case and to receive a life sentence for that offense. The prosecution also agreed not to file a supplemental information charging defendant as an habitual offender. Finally, it was agreed that the charges of unarmed robbery and kidnapping, which arose from a separate transaction, would also be dismissed.

Defendant correctly argues that, where a plea is offered pursuant to a bargain with the prosecutor, voluntariness depends upon the defendant's knowledge of the actual value of the bargain. *People v Lawson,* 75 Mich App 726; 255 NW2d 748 (1977), *People v Huizar,* 89 Mich App 224; 280 NW2d 494 (1979). Where the benefits of the bargain are grossly exaggerated, the plea is not voluntary, and it should be vacated. *Lawson, supra,* 730.

Quoting *Hammond v United States,* 528 F2d 15, 19 (CA 4, 1975), the Court in *Lawson, supra,* 730, stated:

" '[I]n order to plead voluntarily, a defendant must know the direct consequences of his plea, including "the actual value of any commitments made to him." Where, as here, counsel's alleged advice, corroborated by the information supplied by the court, grossly exaggerated the benefit to be derived from the pleas of guilty, it would follow that the pleas were not voluntary.' "

Where the facts in a case indicate a plea is voluntary, whether or not defendant received consideration in return, the plea will be upheld. *People v Philip Smith,* 407 Mich 906, 907 (1979), *People v James,* 90 Mich App 424; 282 NW2d 344 (1979). Clearly, where the value of a bargain is genuine, is valid, and is known to a defendant, that plea will be upheld. *People v Peters,* 95 Mich App 589; 291 NW2d 133 (1980). Thus, the fact that the dropped Counts III and IV arose from the same two sexual acts as Counts I and II and would not have supported separate criminal convictions would not by itself invalidate the plea.

Defendant also argues that the agreement not to file a supplemental information charging him as an habitual offender under MCL 769.11; MSA 28.1083 was meaningless when defendant received an agreed-upon life sentence. He argues that, under the plea agreement, he received two life sentences, so that, even had he been sentenced to a maximum punishment for being a third felony offender, he could not have received any greater punishment. While defendant may not have received a sentence benefit from this plea agreement on this point, it is widely recognized that sentence consequences are not the only benefits that may be received in plea bargaining. A conviction with no effect on a sentence may punish a defendant in several ways. Such a conviction may adversely impact parole considerations, among others. We

reiterate, however, the fact that the defendant may have received reduced, little, or no consideration from this promise by the prosecutor would not by itself invalidate the plea.

Finally, it should be noted that "valuable" consideration flowed to the defendant from the agreement to dismiss the charges of unarmed robbery and kidnapping arising out of a separate transaction for the reason indicated above.

Most importantly, defendant argues that the prosecutor's plea agreement, which included a promise to reduce a separate and unrelated first-degree murder charge to second-degree murder, was illusory when the offense fell under MCL 791.233; MSA 28.2303, as amended. First-degree murder carries a mandatory life sentence with no possibility of parole. MCL 750.316; MSA 28.548 and MCL 791.234; MSA 28.2304. Under the law in effect before December 10, 1978, defendant's agreement to accept a life sentence for second-degree murder would have made him eligible for parole in 10 years. MCL 791.234; MSA 28.2304. The murder that was the subject of the plea agreement occurred after December 10, 1978, however, so it falls within the ambit of MCL 791.233; MSA 28.2303, as amended, which eliminated good time, special good time, and special parole for certain offenses.[1] The Attorney General, in Opinion No. 5583, issued October 16, 1979, interpreted MCL 791.233; MSA 28.2303, as amended, as precluding parole consideration for any prisoner with a life sentence. Defendant argues that the value of all of the above-described aspects of the plea bargain were thereby rendered void.

---

[1] The acts that gave rise to the instant case occurred on December 1, 1978, and hence are not covered by MCL 791.233; MSA 28.2303. *State Appellate Defender v Director of Elections,* 405 Mich 815 (1979).

We note that defendant has filed a separate appeal from the murder conviction, challenging the plea-taking court's noncompliance with GCR 1963, 785.7. In that appeal, however, defendant failed to raise the issue of the applicability of MCL 791.233; MSA 28.2303, as amended. In the instant case, the record reflects that the defendant was well advised and understood all of the consequences of this plea agreement. There is no allegation nor have we any evidentiary record establishing that he was misinformed as to the effect of any of the facets of the plea bargain. If defendant believes his plea bargain was illusory because of the sentence consequences of his plea to the murder charge, he should challenge that plea in the trial or appellate court. The trial court taking the murder plea may establish by evidentiary record that the defendant knew that he was faced with a possible, probable, or legally-mandated, nonparolable life sentence. The trial court may also find that the defendant was misinformed and set aside his plea. The trial court may find that something else was the intent of the parties to the plea agreement and specifically enforce the same. Finally, the trial court or an appellate court may determine that a second-degree murder life sentence is a parolable offense and give defendant the benefits of his plea bargain that he argues for.

Defendant's second challenge to his conviction is that he has been impermissibly placed in double jeopardy[2] and that either the unarmed robbery or

---

[2] Amendment V of the United States Constitution, which extends to the states through the Fourteenth Amendment, *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), states:

"[Nor] shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

Article 1, § 15, of the Michigan Constitution of 1963 similarly states:

"No person shall be subject for the same offense to be twice put in jeopardy."

the breaking and entering conviction must be reversed because one was an essential element and, therefore, a necessarily lesser and included offense of first-degree criminal sexual conduct.

Under the criminal sexual conduct statute, an act of sexual penetration that occurs under circumstances involving the commission of any other felony is first-degree criminal sexual conduct. MCL 750.520b(1)(c); MSA 28.788(2)(1)(c). The information charging defendant did not specify *what* felony was being relied upon to support this charge. The information did, however, charge defendant with two other felonies: breaking and entering and unarmed robbery. The factual basis elicited at the plea-taking proceeding supports a finding that the criminal sexual conduct occurred under circumstances involving the unarmed robbery. Defendant's accomplice took a checkbook from the victim during the sequence of events that constituted criminal sexual conduct. The breaking and entering, however, occurred at a later time and in a different location, so, that offense cannot be regarded as having occurred in those circumstances. We must therefore decide if convictions for both first-degree criminal sexual conduct and the felony of unarmed robbery can be sustained.

We note that this case involves an application of the traditional double jeopardy restraint on courts and prosecutors which prevents imposing double punishment and conviction for a single act. This case does not involve a challenge to a clear legislative intent to doubly punish for a single criminal act. See *People v Jankowski,* 408 Mich 79, 85-86; 289 NW2d 674 (1980), *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *reh den* 406 Mich 1127 (1979).

In this opinion, we disagree with the conclusions

of this Court in *People v Robideau,* 94 Mich App 663; 289 NW2d 846 (1980), and *People v Ferrell,* 99 Mich App 609; 299 NW2d 366 (1980), that the criminal sexual conduct statute expresses a clear intent to authorize multiple convictions.

The Supreme Court, in *Wayne County Prosecutor, supra,* pointed to language in the felony-firearm statute, MCL 750.227b; MSA 28.424(2), that manifested the Legislature's clear intent to doubly punish. The felony-firearm statute described a separate felony offense and indicated that the mandatory two-year sentence is "in addition to" the sentence for the felony and is to be served "consecutively" to and "preceding" the sentence for the felony. The criminal sexual conduct statute, however, does not specify a separate felony, nor does its sentencing provision require consecutive punishment. The Court required a clear expression by the Legislature of an intent to authorize separate convictions.

The United States Supreme Court in *Simpson v United States,* 435 US 6, 15; 98 S Ct 909; 55 L Ed 2d 70 (1978), said:

"[T]his Court has steadfastly insisted that 'doubt will be resolved against turning a single transaction into multiple offenses.' *Bell v United States,* 349 US 81, 84; [75 S Ct 620, 622; 99 L Ed 905] (1955); *Ladner v United States,* 358 US 169; [79 S Ct 209; 3 L Ed 2d 199] (1958)."

Justice Frankfurter, delivering the opinion of the Court in *Bell, supra,* 83-84, wrote:

"It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of

defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes."

As there is no apparent legislative intent to provide for cumulative convictions for a single criminal act, it is necessary to determine whether, on the facts of the case at issue, the lesser offense is proved by the same evidence used to prove the greater, *Jankowski, supra,* 86, 91, *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976).

Applying this analysis to the criminal sexual conduct statute, we conclude that conviction for an underlying felony is impermissible where that felony is evidentially used as one element of first-degree criminal sexual conduct.

This Court has treated convictions for felony murder and its underlying felony as impermissible under the state constitution's double jeopardy clause. *People v Allen,* 94 Mich App 539; 288

NW2d 451 (1980), *People v Wilder*, 82 Mich App 358; 266 NW2d 847 (1978), *lv gtd* 403 Mich 816 (1978), *People v Robert G Thompson*, 81 Mich App 348; 265 NW2d 632 (1978), *lv gtd* 402 Mich 938 (1978).

The prosecution argues that a separate felony—kidnapping—was shown by the testimony at the plea-taking proceeding. If this crime were estab-, lished, it would avoid double jeopardy. *People v Terry Alexander*, 82 Mich App 621; 267 NW2d 466 (1978).

We do not find, however, that the evidence at the plea-taking proceeding would support a finding that defendant had committed a kidnapping. In *People v Adams*, 389 Mich 222, 238; 205 NW2d 415 (1973), the Michigan Supreme Court analyzed the asportation requirement of kidnapping and set forth several factors for trial courts to consider in determining whether asportation has been established. Among those factors are:

"The movement element is not sufficient if it is 'merely incidental' to the commission of another underlying lesser crime.

\* \* \*

"If the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the necessary legal asportation, but there could be asportation without this element of additional danger so long as the movement was incidental to a kidnapping and not a lesser crime."

This Court has split on the question of whether the asportation required for kidnapping may be incidental to the commission of another offense when the punishment for that offense is coequal to that of kidnapping. In *People v Hardesty*, 67 Mich

App 376, 378; 241 NW2d 214 (1976), one panel of this Court found the "merely incidental" analysis inapplicable to rape because it interpreted the *Adams* holding as being aimed at preventing a prosecutor from grossly distorting a *lesser* crime into a much more serious crime. See also *People v Roger Harris,* 80 Mich App 161; 262 NW2d 912 (1977). Several other panels of this Court have, however, interpreted *Adams* as preventing a prosecutor from converting a single crime into two offenses. *People v Lynn,* 91 Mich App 117; 283 NW2d 664 (1979), *lv gtd* 407 Mich 902 (1979), *People v Barker,* 90 Mich App 151; 282 NW2d 266 (1979), *lv gtd* 407 Mich 902 (1979), *People v White,* 89 Mich App 726; 282 NW2d 200 (1979), *People v Worden,* 71 Mich App 507; 248 NW2d 597 (1976).

We believe the reasoning expressed in *Worden, supra,* is persuasive. We note that the Supreme Court in *Adams* quoted Judge, now Justice, LEVIN's opinion for the majority in the Court of Appeals case of *People v Otis Adams,* 34 Mich App 546, 560; 192 NW2d 19 (1971), which said:

" 'It is obvious that virtually any assault, any battery, any rape, or any robbery involves some "intentional confinement" of the person of the victim. To read the kidnapping statute literally is to convert a misdemeanor, for example, assault and battery, into a capital offense. A literal reading of the kidnapping statute would permit a prosecutor to aggravate the charges against any assailant, robber, or rapist by charging the literal violation of the kidnapping statute which must inevitably accompany each of those offenses.' " 389 Mich 222, 232-233.

Analyzing the facts presented at the plea-taking proceeding, we conclude that the movement involved was merely incidental to the commission of the rape. The asportation necessary to a finding

that defendant had kidnapped his victim was not established.

We conclude that defendant's convictions for first-degree criminal sexual conduct and for un-armed robbery are impermissible. We therefore vacate the unarmed robbery conviction and affirm defendant's convictions of first-degree criminal sexual conduct and breaking and entering.

Beasley, P.J., concurs in the result only.