STATE OF NEBRASKA, APPELLEE, V. DOUGLAS M. SCHOLL,
APPELLANT.
419 N.W.2d 137

Filed February 5, 1988.    No. 87-481.

Arthur C. Toogood of Toogood and McGath, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and HANNON, D.J.

HASTINGS, C.J.

Defendant has appealed from an order of the district court which denied his motion for postconviction relief without an evidentiary hearing. In his motion he alleges that he "was denied his right to effective assistance of Counsel as guaranteed by the Sixth Amendment of the United States Constitution" in that his counsel informed him that he "was very likely to face on [sic] enhanced sentence by virtue of the Habitual Criminal Act"; that "he would have to plea bargen [sic] or the County Attorney would make it very hard on him"; and that "Defendant entered said plea after being informed by his attorney that part of the plea bargain was that Defendant would not be charged as the Habitual Criminal," when in fact the "Defendant did not have the required prior convictions" to permit such a charge. The trial court, by its order, found that from the files and records of the case, the defendant was entitled to no relief.

On September 13, 1985, defendant pled guilty to a July 16, 1985, burglary and was sentenced to a term in the Nebraska Penal and Correctional Complex. That conviction was affirmed by this court without opinion in *State v. Scholl*, 222 Neb. xxiii (case No. 85-798, Feb. 19, 1986), where the only issue raised was the severity of the sentence.

During the arraignment proceedings at which defendant entered his plea, the trial court conducted an exhaustive examination of the defendant as to his rights and fully and fairly explained them to him in detail. In ascertaining that there was a factual basis for a guilty plea, the court detailed the elements of the crime charged and the defendant agreed that he had committed the offense. The colloquy then continued:

Q- Would you tell me what you did, Mr. Scholl?

A- On about July 16th, 1985, I, myself, and Bob Feaseman, broke into Terry Beitner's house at approximately nine o'clock, 9:30 in the morning and stole money, food, clothing, liquor out of the house and then went back down to the river.

. . . .

Q- And how did you break in; did you force in?

A- We forceably broke in the front door.

Q- How did you do that?

A- By kicking it.

Earlier in the proceedings, the following exchange occurred between the court and the two attorneys:

THE COURT: Have there been any plea negotiations in this case, Mr. Kristensen, and if so, what have they been?

MR. KRISTENSEN [prosecutor]: Yes, Your Honor, there have been some plea negotiations in this case. They are as follows: That there was an original complaint filed for burglary, a Class III felony, and also for theft, misdemeanor theft, that being a Class I. The negotiations entered into were as follows: That if he would waive his preliminary hearing on the burglary and upon entry of a plea of guilty in this Court, that the State would dismiss the misdemeanor theft upon entry of that plea.

THE COURT: Thank you. Is that your understanding of the plea negotiations, Mr. Wondra?

MR. WONDRA [defense counsel]: Yes, Your Honor. I would like to make a couple of minor additions. One, that the County Attorney of Kearney County would not file an habitual criminal complaint on this matter at any time.

MR. KRISTENSEN: Yes, that's correct, Your Honor.

MR. WONDRA: And also that he would not object to our request for concurrent sentencing at the sentencing hearing in this matter.

THE COURT: All right.

MR. WONDRA: He would not stand mute, he said, but he would not object to our request, I believe was stated.

MR. KRISTENSEN: Yes, Your Honor, that's correct.

*I'm not sure that there's an habitual criminal there, but I agree in any event not to file that* and that I would not object to those, but I will not stand mute in sentencing, but I will not object to their request for those things.

THE COURT: All right, is that your understanding, then?

MR. WONDRA: Yes, Your Honor, it is.

(Emphasis supplied.)

There is nothing in the record that discloses any information on earlier felonies which the defendant might have committed. However, the presentence report, which indicates a birth date of May 6, 1967, reveals several juvenile offenses, an August 5, 1985, sentence of 2 to 5 years for a May 25 escape from the Youth Development Center-Kearney, and a September 11, 1985, sentence of 1 to 3 years for a July 15 escape from the Buffalo County detention center. The sentence in the present case, 3 to 5 years, was imposed on September 13, to run concurrently with the other two sentences.

In *State v. Ellis*, 214 Neb. 172, 176, 333 N.W.2d 391, 394 (1983), this court stated: "[I]n order to warrant the enhancement of the penalty under the Nebraska habitual criminal statute . . . the prior convictions, except the first conviction, must be for offenses committed after each preceding conviction, and all such prior convictions must precede the commission of the principal offense." Thus, under *Ellis*, on the basis of the facts presented to us, there appeared to be no opportunity to charge the defendant herein under the habitual criminal statute. *Ellis* was a 4-to-3 decision, which in turn had overruled *State v. Pierce*, 204 Neb. 433, 283 N.W.2d 6 (1979), also a 4-to-3 decision, which interpreted the habitual criminal statute in such a way that Scholl could have been so charged in this case.

Defendant assigns as his only error the fact that the trial court refused to grant him an evidentiary hearing on his verified motion for postconviction relief.

Generally, when a motion for postconviction relief and the files and records show that a defendant is not entitled to relief, no evidentiary hearing is required. *State v. Jackson*, 226 Neb. 857, 415 N.W.2d 465 (1987). One seeking postconviction relief

has the burden of establishing the basis for such relief. *State v. Jackson, supra*. The findings of the district court in denying postconviction relief will not be disturbed on appeal unless they are clearly erroneous. *State v. Broomhall, ante* p. 341, 417 N.W.2d 349 (1988).

Defendant's principal complaint raised in his motion for postconviction relief centers around ineffective assistance of counsel in that a plea bargain was "sold" to him by his lawyer which involved abstention from being prosecuted as a habitual criminal, when such could not have been possible under the facts and law of this case.

Although we have said in *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974), that an evidentiary hearing on a motion for postconviction relief is usually advisable to avoid protracted litigation, there is an abundance of support for the denial of any such hearing under certain circumstances, as earlier reflected in the cited opinion in *Jackson*. However, we have also said that where the facts alleged, if true, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied, an evidentiary hearing must be granted. *State v. Lofquest*, 223 Neb. 87, 388 N.W.2d 115 (1986). If the record is silent respecting those allegations, the district court is bound to hear the petitioner's evidence. *State v. Stranghoener*, 212 Neb. 203, 322 N.W.2d 407 (1982).

The fact of the matter is that the State fully performed on its part the essentials of the plea bargain. A misdemeanor theft charged was dismissed. A concurrent sentence was not opposed. The State did not, and stated that it would not, attempt to file a habitual criminal charge.

Something was done in open court by the prosecutor to correct any misapprehensions the defendant may have had regarding the habitual criminal aspect of his bargain. The record itself does not indicate that the defendant pled with an exaggerated belief in the value of his plea; yet, the defendant submits that his plea was the product of an illusory bargain.

It is important to note that at the time the plea bargain discussion took place, the plea had not yet been accepted by the court. The instant case is similar to *People v Peter Williams*, 153 Mich. App. 346, 395 N.W.2d 316 (1986), where the

defendant was aware, before the taking of his plea, that the plea bargain agreement under which the State waived its right to file a supplemental habitual offender violation possibly had no value. Yet, Williams chose to plead guilty in spite of that knowledge. The court found that the defendant was not misinformed of the actual value of the bargain, and therefore the plea was made voluntarily and intelligently. Focus was placed on the defendant's *knowledge* of the value of the plea bargain, not the value itself.

> We find nothing in the law that requires a plea bargain to have a specifically stated value to a defendant. The only requirement is that if there is a value it must be clearly and accurately stated to the defendant and be placed on the record. A defendant may wish to plead guilty merely because he is guilty and wants to avoid the hardship of trial. As long as the defendant knows in advance that the plea bargain has no value or knows that the value is questionable or minimal, the plea bargain is not illusory.

*Id*. at 350, 395 N.W.2d at 318.

*Williams* relied upon *People v Peete*, 102 Mich. App. 34, 301 N.W.2d 53 (1980), *appeal denied* 411 Mich. 962 (1981). In *Peete*, the court ruled that where the value of a bargain is genuine, is valid, and is known to the defendant, the plea will be upheld. As explained above, the defendant in the case at bar was made aware of the value of the agreement regarding a habitual criminal charge, while appearing in open court. Voluntariness is dependent upon a defendant's knowledge of the actual value of his plea bargain. Scholl's plea was voluntary.

The defendant (Scholl) understandingly entered his plea and knew its effects. Thus, the plea represented an intelligent and voluntary choice among the alternative courses of action open to a criminal defendant. *State v. Wiley*, 225 Neb. 55, 402 N.W.2d 311 (1987).

It was further determined in *Peete, supra*, that if the facts of a case indicate that a plea is voluntary, regardless of whether the defendant received consideration in return, the plea will be upheld. See *People v Mrozek*, 147 Mich. App. 304, 382 N.W.2d 774 (1985).

Not only was Scholl's plea voluntary, but he also received

consideration. The fact that his prior convictions of escape would not have supported a habitual criminal charge will not, by itself, invalidate the plea. Despite his contentions, the defendant nonetheless received the benefit of his bargain, i.e., the misdemeanor theft charge was dropped and no objection to concurrent sentencing was made. In the case of *People v Eric Thompson*, 101 Mich. App. 428, 300 N.W.2d 585 (1980), the prosecutor had agreed not to file a supplemental information charging the defendant as a habitual offender. In fact, the people were foreclosed from such a filing because they did not file it at the same time the original information was filed. The court held: "In our opinion defendant's bargain was no illusion. Defendant may not have received as many benefits as he thought he would be receiving for his plea, but he did receive many benefits for the plea." *Id.* at 430, 300 N.W.2d at 586. See, also, *People v Kidd*, 121 Mich. App. 92, 328 N.W.2d 394 (1982), where a plea based on a prosecutor's promise not to file a supplemental information was held not to be illusory, especially where the plea resulted in other benefits to the defendant as well.

The defendant alleges ineffective assistance of counsel. A criminal defendant is entitled not only to counsel, but to the effective assistance of counsel. *State v. Apodaca*, 223 Neb. 258, 388 N.W.2d 837 (1986). Defendant's motion claims that he was denied effective assistance of counsel, causing him to plead guilty to burglary. Defendant specifically asserts that because he was not within the habitual criminal statute, his plea was not voluntary and intelligent; thus, he should have been granted a hearing on the effectiveness of counsel issue.

*State v. Stranghoener*, 212 Neb. 203, 322 N.W.2d 407 (1982), held that where a claim of ineffective counsel is made, the defendant must show how or in what manner the alleged inadequacy prejudiced him.

"When the defendant in a postconviction motion alleges a violation of his constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the

criminal law in the area. Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his case as a result of his attorney's actions or inactions."

*State v. Broomhall, ante* p. 341, 343, 417 N.W.2d 349, 351 (1988), quoting *State v. Rubek*, 225 Neb. 477, 406 N.W.2d 130 (1987).

Prejudice means a reasonable probability that but for the attorney's error, the result of the case would have been different. *State v. Jackson*, 226 Neb. 857, 415 N.W.2d 465 (1987); *State v. Rivers*, 226 Neb. 353, 411 N.W.2d 350 (1987). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Broomhall, supra; Rubek, supra.*

The presumption that trial counsel is competent must be overcome by the defendant. *Tinlin v. Parratt*, 680 F.2d 48 (8th Cir. 1982). See, also, *State v. Terrell*, 220 Neb. 137, 368 N.W.2d 499 (1985).

In the case at hand, the defendant, when comparison is made between the allegations of his motion and the undisputed facts contained in the record, has failed to meet his burden of showing a reasonable probability that the results below would have been different but for counsel's deficiencies. A requisite and sufficient factual basis for acceptance of the plea was found. The dialogue between the defendant and the court at the taking of the plea, as previously set out, demonstrated that the defendant was not prejudiced.

Because that discussion took place after the habitual criminal discussion, it is established that the defendant was not prejudiced as a result of his counsel's actions in securing the bargain. As was pointed out in *People v Cisco*, 113 Mich. App. 109, 110-11, 317 N.W.2d 308, 309 (1982):

The acceptance of the prosecutor's plea offer not to file habitual offender charges is not illusory for the reason that the defendant is simply assured there will not be a subsequent attempt by the prosecutor to do so, even if the chances of a successful filing possibly would be minimal. It goes against all logic to give a defendant this assurance, which in many and probably most cases is requested by the defense as a matter of precaution by the defense attorney,

and then on appeal use it as a basis to reverse.

"[A] lawyer is not required to be infallible." *State v. Bevins*, 187 Neb. 785, 787, 194 N.W.2d 181, 182 (1972). " '[W]hen the defendant waives his state court remedies and admits his guilt . . . he assumes the risk of ordinary error in either *his* or his attorney's assessment of the law and facts.' " *State v. Miller*, 202 Neb. 443, 446, 275 N.W.2d 614, 616 (1979), quoting *Bevins, supra.* See, also, *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights; whether the defendant is fully aware of his surroundings; whether defendant is satisfied as to counsel's services and representation; and whether it is true that defendant was not improperly influenced by threats or promises; and whereat the court is further told by the defendant of facts which leave no doubt as to defendant's guilt and the voluntary and knowledgeable entry of a plea of guilty, all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

Defendant received the full benefit of his bargain, his prior longtime experience in the criminal justice system belies any claim of ignorance, and there is no possibility of the substantiation of a believable claim that the result would have been different absent the oblique reference to the habitual criminal statute.

The judgment of the district court is affirmed.

AFFIRMED.