IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KELLOGG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAEVIER K. KELLOGG, APPELLANT.

Filed December 20, 2022.    No. A-22-240.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Sandra L. Jarvis, of Jarvis Criminal & Immigration Law, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Daevier K. Kellogg pled no contest to one count of attempted possession of a deadly weapon by a prohibited person in violation of Neb. Rev. Stat. §§ 28-1206(1)(a) and (3)(b) and 28-201(4)(a) (Cum. Supp. 2020). The Douglas County District Court sentenced Kellogg to 22 to 28 years' imprisonment. Kellogg claims that his sentence was excessive and that he received ineffective assistance of trial counsel. We affirm.

## II. BACKGROUND

On September 7, 2021, the State filed an information charging Kellogg with one count of possession of a deadly weapon by a prohibited person, a Class ID felony, and one count of possession of a stolen firearm, a Class IIA felony. On September 23, the district court accepted Kellogg's plea of not guilty.

During a hearing held on January 20, 2022, the parties indicated that a plea agreement had been reached in the case. Pursuant to the agreement, the State moved to dismiss the pending violation of probation in a separate case, requested that the district court terminate that probation, and filed an amended information charging Kellogg with one count of attempted possession of a deadly weapon by a prohibited person, a Class II felony. After the court advised Kellogg of his constitutional rights and the consequences of entering a plea of no contest, Kellogg pled no contest to the single count in the amended information.

According to the factual basis provided by the State:

[O]n or about August 2nd, 2021, officers respond[ed] to a fight/disturbance. They s[aw] [Kellogg] trying to fight another individual. As officers approached, [Kellogg] tried to leave the area. They detained him. He resisted arrest. Officers located a firearm concealed upon [Kellogg]'s person in his pants. . . . [Kellogg] is a prohibited person preventing him from owning or possessing firearms. All events occurr[ed] in Douglas County, Nebraska.

The parties stipulated that, on August 2, 2021, "Kellogg was a prohibited person by virtue of a valid felony conviction." The district court accepted the stipulation and took judicial notice of a prior case wherein Kellogg was convicted of a felony. The court granted the state's motion to dismiss a probation violation in a separate case; Kellogg's probation in that case was terminated unsatisfactorily. The court informed Kellogg that it would order a presentence investigation.

After a hearing held on March 10, 2022, the district court sentenced Kellogg to 22 to 28 years' imprisonment. Kellogg was given 221 days' credit for time served.

Kellogg appeals.

## III. ASSIGNMENTS OF ERROR

Kellogg claims, reordered, (1) that the district court abused its discretion by "failing to adequately apply the sentencing factors resulting in an excessive sentence" and failing to "compare ruling with similarly situated defendants," and (2) that Kellogg received ineffective assistance when his trial counsel (a) failed to "reasonably explain the allegations and corresponding charges, plea bargain, and penalty allowing [Kellogg] to make informed decision about pleading to the amended information," (b) speculated on sentencing and "planting in [Kellogg] an expectation of two to four years punishment, leading [Kellogg] to plead," and (c) failed to "properly advise [Kellogg] on the sentencing phase, to participate in the pre-sentence investigation process; garner supporting documents to make a formidable case by casting [Kellogg] in positive light."

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance

and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Kellogg claims that the district court imposed an excessive sentence. Kellogg was convicted of one count of attempted possession of a deadly weapon by a prohibited person, a Class II felony. A Class II felony is punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). The district court sentenced Kellogg to 22 to 28 years' imprisonment, which was within the statutory range. As such, we review the district court's sentencing determination only for an abuse of discretion.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Kellogg was 20 years old at the time of sentencing. According to the presentence investigation report (PSR), Kellogg was unmarried but had a girlfriend with whom he cohabitated prior to his incarceration. Kellogg had no children. He obtained his high school diploma in 2019 and, prior to his incarceration, worked for a moving company.

We will not recount Kellogg's juvenile history, but Kellogg's adult criminal history includes convictions for the following: "Possess Drug Paraphernalia" in 2019 ($50 fine); "Robbery - . . . Felony 2A" in 2019 (4 years' probation); "Robbery – Felony 2" in 2020 (10 days' jail); "Fraud Criminal Impersonation – Felony 4" and "False Reporting" in 2020 ($50 fine and 9 days' jail; and "Theft Shoplifting" in 2021 (5 days' jail).

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation. Kellogg was assessed as a "very high" risk to reoffend. He scored in the "medium" risk range in the criminogenic risk factor domain for alcohol/drug problems. He scored in the "high" risk range in the domains for criminal history, education/employment, and leisure/recreation. He scored in the "very high" risk range in the domains for family/marital, companions, procriminal attitude/orientation, and antisocial patterns.

At the sentencing hearing, Kellogg's counsel stressed that "there was no use or attempted use of th[e] firearm during the course of any physical altercation." Counsel further stated that Kellogg had "reached a point in his life where he realizes that if he continues to hang out with the [same] crowd[,] . . . he's going to end up doing life in prison on [an] installment plan" and that he would like to "move on with his life." Counsel requested that the district court impose a sentence of imprisonment not significantly longer than the minimum followed by a longer term of parole, where "if he doesn't comply with the terms and conditions of his parole[,] then he would be facing substantial additional time." Counsel argued that such a sentence would allow Kellogg to demonstrate that "he can behave himself" and provide him with the "motivation necessary [for him to] stay[] out of trouble."

Kellogg personally informed the district court that he "accepted responsibility for [his] actions" and "that there's consequences to [his] actions." But, being 20 years old, he was "still learning." He explained that he had been "sitting around with the wrong crowds" and that was not what he saw for his future, noting that he "was raised better than this." He said he was accepting responsibility and he had taken numerous "mod programs" while incarcerated, "[a]ll the way from offender accountability to anger management to emotions and regulations." He further stated that he was "[t]rying to get set up for school."

The State submitted without further argument.

The district court stated that it had considered all of the information presented at the hearing and the information in the PSR in determining an appropriate sentence to impose. The court recounted Kellogg's violent criminal history, noting that he was on probation for another "violent offense" at the time of the current offense. The court stated that Kellogg "[o]bviously[] didn't take [his] probation seriously." The court expressed skepticism that supervision would benefit Kellogg in the future, citing the probation officer's finding that Kellogg was "at a very high risk for resistance to rehabilitative guidance and treatment." The court also stated that Kellogg was unwilling to accept responsibility for the offense, noting that he had stated during his presentence investigation interview that "the police planted the gun." The court acknowledged Kellogg's young age, but stated that he poses a "very high risk" to himself and the community. The court then sentenced Kellogg as previously set forth.

In his brief on appeal, Kellogg argues that the district court abused its discretion "when it failed to use like cases for guidance when crafting a sentence." Brief of appellant at 22. We disagree. The Nebraska Supreme Court has held that a sentencing court is "under no obligation to conduct a comparative analysis of similar cases." *State v. Anders*, 311 Neb. 958, 988, 977 N.W.2d 234, 257 (2022). As such, this argument fails.

Kellogg also argues that the district court abused its discretion "by affording no weight to the existing sentencing factors." Brief for appellant at 19. Specifically, Kellogg argues that the district court merely considered his "age and that's all." *Id*. at 21. He argues that the court failed to consider that he graduated high school despite growing up "poor" and "in a broken home . . . [with] no father figure." *Id*. at 20. He further claims that the district court "gave improper weight to [his] criminal history." *Id*. at 20. The record shows otherwise.

At the sentencing hearing, the district court expressly stated that, in crafting an appropriate sentence, it had considered "[Kellogg's] age, mentality, education, experience, . . . background, past criminal record, [the] nature of the offense, [and the] motivation for the offense." The court also stated that it had considered the information in the PSR; the PSR contained almost all of the information regarding Kellogg's individual circumstances that he highlighted in his brief on appeal. To the extent that Kellogg's individual circumstances may weigh in favor of a more lenient sentence, our review of a sentencing order is limited to an abuse of discretion standard. See *State v. Lierman, supra*. Because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. See *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). Accordingly, we conclude that while the sentence imposed was severe, we cannot say the district court abused its discretion.

## 2. Ineffective Assistance of Counsel

Kellogg alleges three claims of ineffective assistance of trial counsel. Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Kellogg is represented by different counsel on direct appeal than he was at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id*. Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. See, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha, supra*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement of an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

With these governing principles in mind, we turn now to address Kellogg's three ineffective assistance of trial counsel claims.

### (a) Failure to Explain Before Entering Plea

Kellogg assigns as error that trial counsel failed to "reasonably explain the allegations and corresponding charges, plea bargain, and penalty allowing [Kellogg] to make informed decision about pleading to the amended information." Brief for appellant at 9. In support of that alleged claim, Kellogg argues that trial counsel "failed to learn [Kellogg's] objectives, background and needs to properly advocate on his behalf." *Id.* at 16. He contends that trial counsel asked him "to sign documents filled with legalese which he could not be expected to understand, i.e. waiver of appearance and written arraignment." *Id*. Kellogg claims trial counsel failed to weigh his "age, maturity, experience or cognitive function and tailor communication in a simplified manner that would have been more effective and ultimately placing [Kellogg] in the best position to make informed decisions about his own representation." *Id*. Kellogg goes on to describe that he comes from "a poor social and economic background and has some college education," and that he "should not have been expected to know and understand the criminal process and the law sufficient

to make informed decisions about his defense." *Id*. Kellogg further contends his trial counsel "failed to learn, or simply ignored, facts" such as Kellogg graduating from public school in 2019 and that he was preparing to enroll in a college course at a community college; he suggests this demonstrates that he "placed his education before work experience which explains his lack of work history." *Id*. Kellogg also indicates that he has "close family ties in Omaha, particularly his elderly grandmother, who would like to get his [sic] grandson back as she's grown dependent on." *Id*. In summary, Kellogg argues, "All these factors and others were entirely missed, overseen or discarded by trial counsel. [Kellogg] was just another name and case number." *Id*.

The State responds that "[i]t is unclear exactly what Kellogg is asserting here as trial counsel's deficient performance." Brief for appellee at 15. We agree that Kellogg fails to clearly identify what his trial counsel did or did not explain regarding "the allegations and corresponding charges, plea bargain, and penalty" that would have better informed Kellogg and caused him to change his mind about entering a plea rather than proceeding to trial. And to the extent Kellogg attempts to raise new claims and arguments related to deficient performance in his reply brief, we decline to consider new alleged errors raised for the first time in a reply brief. See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014) (errors not assigned in appellant's initial brief are waived and may not be asserted for first time in reply brief).

Regarding trial counsel's failure to "reasonably" explain the charges, plea bargain, and penalty to Kellogg, resulting in Kellogg not making an informed decision about entering a plea, we find the record affirmatively refutes Kellogg's claim. We agree with the State's assertion that "regardless of whether Kellogg's trial counsel effectively communicated these things to Kellogg, [Kellogg] cannot show prejudice because they were explicitly explained to him by the district court during the plea hearing, and Kellogg affirmatively represented that he understood each of these concepts and freely and voluntarily entered his plea of no contest." Brief for appellee at 15-16.

Notably, before accepting the plea agreement, the district court specifically informed Kellogg that it was going to ask him questions to make sure that he understood the constitutional rights he was "giving up" if his plea was accepted, that his plea was being "made freely and voluntarily," and that Kellogg was "in fact, guilty of this charge." Kellogg stated his name and his age and said that he graduated from a public school in Omaha. He denied being treated for or having any mental illness or emotional disability. Kellogg then entered a plea of no contest to the amended information. The court went on to provide further advisements related to: Kellogg's right to a speedy jury trial, pointing out that "every one of those jurors would have to find [Kellogg] guilty beyond a reasonable doubt"; Kellogg's right to confront witnesses and subpoena witnesses to "come to court and testify on [Kellogg's] behalf if [he felt] it would help [him] in [his] case"; Kellogg's waiving of his right to have a separate hearing outside the presence of a jury to determine whether any statements given by Kellogg or evidence seized from him violated Kellogg's constitutional rights; Kellogg's presumption of innocence and right to remain silent; and Kellogg's right to be represented by an attorney at all stages of the criminal proceeding, including trial and appeal. When Kellogg was asked if he understood the rights he was waiving by entering his plea, Kellogg responded, "Absolutely."

The district court proceeded to detail the charge and pointed out that the State claimed Kellogg had previously been convicted of a felony, thus making Kellogg "a prohibited person." When asked if he understood the charge, Kellogg replied, "Yes, Your Honor." The court explained

and Kellogg acknowledged that a sentence imposed for a Class II felony would be a minimum of 1 year up to 50 years' imprisonment. When asked by the court whether anyone told Kellogg or led him to believe that by entering a plea he would get a "light sentence, be rewarded" or was promised something to plead no contest, Kellogg replied, "No, Your Honor." When asked if anyone threatened him or offered him any leniency, "especially law enforcement" to get him to plead no contest, Kellogg replied, "No." When asked if his plea was his "free and voluntary act," Kellogg replied, "Absolutely." He further replied affirmatively when asked if he had enough time to discuss his case with his attorney and whether he was satisfied his attorney and had been "properly represented."

Given the thorough presentation of the offense being charged and those being dismissed as part of the plea agreement, the district court's detailed explanation of and Kellogg's expressly stated understanding of the constitutional rights Kellogg was waiving, along with the court's questioning of and Kellogg's expressly stated understanding of the adequacy of Kellogg's legal representation and the lack of any outside promises or threats, Kellogg could not establish prejudice even if his trial counsel was somehow deficient in communicating such matters to him. As the Nebraska Supreme Court has stated:

> If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights; whether the defendant is fully aware of his surroundings; whether defendant is satisfied as to counsel's services and representation; and whether it is true that defendant was not improperly influenced by threats or promises; and whereat the court is further told by the defendant of facts which leave no doubt as to the defendant's guilt and the voluntary and knowledgeable entry of a plea, all done during the sanctity of a full and formal court hearing, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*State v. Scholl*, 227 Neb. 572, 580, 419 N.W.2d 137, 142 (1988).

Kellogg's claim of ineffective assistance of trial counsel related to counsel's alleged failure to "reasonably explain the allegations and corresponding charges, plea bargain, and penalty allowing [Kellogg] to make informed decision about pleading to the amended information," fails.

(b) Alleged Statements Regarding Sentence

Kellogg further claims that trial counsel improperly led him to believe that he would receive 2 to 4 years' imprisonment if he pled no contest. He asserts that "[t]rial counsel failed to advise [him] that sentencing is entirely discretionary" and that, but for trial counsel's misrepresentations, he would have "insisted on going to trial." Brief for appellant at 17.

We again find that the record affirmatively refutes Kellogg's claim. At the plea hearing, the district court expressly informed Kellogg that the charge against him, a Class II felony, was punishable by imprisonment for a minimum of 1 year and a maximum of 50 years. Kellogg affirmatively responded to questions from the district court indicating that he understood the possible sentence that could be imposed. Kellogg further affirmed that no one had "led [him] to

believe that if [he] pled no contest . . . [he] would get a light sentence." Because the record refutes Kellogg's claim on appeal, this claim of ineffective assistance of counsel fails.

Kellogg also appears to be suggesting that trial counsel should have negotiated a plea in the probation violation case which involved a Class IIA felony (attempted robbery) instead of negotiating a plea in the present case since a Class IIA felony would have a maximum sentence of 20 years' imprisonment rather than the 50-year maximum available in the present case. However, as the State points out, Kellogg "fails to explain how a more favorable agreement would have materialized." Brief for appellee at 18. As the State suggests, it is hardly deficient performance when trial counsel negotiated an agreement where Kellogg avoided being resentenced to prison in that separate case "following his obvious violation of probation." *Id*. "[T]his negotiated provision removed the possibility of [Kellogg] receiving an additional sentence of up to 20 years in prison and amounted to an extremely favorable plea bargain for Kellogg." *Id.*

Kellogg was facing two felony charges in the present case: one count of possession of a deadly weapon by a prohibited person, a Class ID felony, and one count of possession of a stolen firearm, a Class IIA felony. Additionally, in a separate criminal case, Kellogg was facing his 4-year probation sentence being revoked, which could have resulted in a separate sentence of imprisonment for that Class IIA felony. As part of the plea agreement, the State reduced the Class ID felony (mandatory minimum 3 years' imprisonment and up to 50 years' imprisonment) in the present case to attempted possession of a deadly weapon by a prohibited person, a Class II felony (1 to 50 years' imprisonment). Further, the State agreed to dismiss the stolen firearm charge and to withdraw its action in the separate case where Kellogg was facing a probation violation. As indicated by the State, because of the plea agreement in the present case, Kellogg avoided the potential for a separate sentence of incarceration in the other case. We agree with the State that this claim of deficient performance fails.

### (c) Alleged Deficiencies During "Sentencing Phase"

Kellogg assigns as error that trial counsel "failed to properly advise [Kellogg] on the sentencing phase, to participate in the pre-sentence investigation process; garner supporting documents to make a formidable case by casting [Kellogg] in positive light." Brief for appellant at 9.

### (i) Advice Regarding Presentence Investigation

Kellogg argues that trial counsel "ill advised [Kellogg] not to participate in [sic] with the probation officer in his evaluation which prevented him from engaging in meaningful reflection and introspection that the court could consider." *Id.* at 17. This claim is puzzling since the record reflects that Kellogg did participate with a probation officer in developing a PSR. It does appear, however, that in the PSR, Kellogg provided a limited "Defendant's Statement," as follows:

> After speaking with my attorney, I will decide to refrain from speaking about my case per his request. I will say that I could've chose a better crowd to be around and indulged in more positive activities than I chose that night. I do understand that I can't blame no one but myself and I am definitely better than what o[c]curred.

- 8 -

Even assuming Kellogg's trial counsel advised Kellogg to refrain from providing a fuller written statement for the PSR, we find that Kellogg cannot establish that he was prejudiced by this claimed deficiency because he did offer "reflection and introspection" in his written statement, as well as in other aspects of his reporting for the PSR, and at the sentencing hearing. Notably, during his allocution at the sentencing hearing, Kellogg told the court that he "accepted responsibility for [his] actions" and "that there's consequences to [his] actions." He explained that he had been "sitting around with the wrong crowds" and that was not what he saw for his future, noting that he "was raised better than this." He said he was accepting responsibility and he described programs he had taken since being incarcerated.

This alleged claim of ineffective assistance of counsel fails.

*(ii) Failure to Provide Supporting Documents*

Kellogg further assigns that trial counsel was ineffective by failing to "garner supporting documents to make a formidable case by casting [Kellogg] in positive light." Brief for appellant at 9. Kellogg argues that "trial counsel did not prepare or present any supporting documents highlighting significant positive factors like attainment of higher education and enrollment at [a community college] or even letters from family who are dependent on [Kellogg]." *Id.* at 18. As an example of the latter, Kellogg refers to his "paternal grandmother, an elderly woman, [who] depended on [Kellogg] before and continues to need his assistance now." *Id.* In summary, Kellogg claims trial counsel made no attempt to mitigate sentencing by providing evidence of "favorable factors" which "may have persuaded the court to impose a light sentence." *Id.* Kellogg claims that trial counsel failed to "zealously advocate for [him]" at the sentencing hearing because "[t]rial counsel made no attempt to identify or present to the court any positive factor[s]" relevant to sentencing. *Id.*

Regarding trial counsel not presenting "positive" evidence related to Kellogg's interest in obtaining higher education at the sentencing hearing, we conclude that Kellogg cannot show that he was prejudiced by this claimed deficiency. Kellogg's interest in obtaining higher education was brought to the district court's attention by the PSR and Kellogg himself. The PSR stated the following:

> [Kellogg] explained that he is interested in participating in the 180 Re-Entry Assistance Program at Metropolitan Community College. This program is designed to provide services and support to incarcerated individuals and those transitioning from correctional facilities and treatment centers so they can make a successful transition and achieve their education and employment goals. 180 RAP is based out of the Fort Omaha Campus of Metro Community College. [Kellogg] stated that he is interested in completing a course in Business Administration so that he can open a clothing store.

Additionally, during his allocution at sentencing, Kellogg informed the district court that he was "[t]rying to get set up for school."

Regarding the alleged failure to prepare and submit letters from family dependent upon Kellogg, namely, his paternal grandmother, Kellogg fails to argue this point with sufficient specificity; he does not explain how his grandmother "need[s] his assistance," nor how that relationship would have impacted his sentence given the numerous other factors available for

consideration by the district court. Regardless, Kellogg cannot show that he was prejudiced by this alleged deficiency. Kellogg had two opportunities to bring his grandmother's dependence on him to the district court's attention: during allocution at the sentencing hearing and during his presentence investigation interview. Notably, in the PSR, Kellogg reported to the probation officer that his grandmother helped raise him, he was living with her, and she was depositing money into his jail account. There was no reporting by Kellogg that his grandmother required any particular assistance from him; rather it appeared the other way around.

Finally, regarding trial counsel not advocating more zealously at sentencing, the record demonstrates that trial counsel stated that Kellogg's criminal history was attributable to his young age and immaturity, but that Kellogg was "committed to change." Counsel also emphasized the lack of violence involved in the present offense, stating that "[t]here was no attempt by Mr. Kellogg to get out the gun, point the gun at anyone, or use the gun." Trial counsel's comments spoke directly to the *Lierman* sentencing factors of "age," "mentality," and "violence involved in the commission of the crime." See *State v. Lierman*, 305 Neb. 289, 308-09, 940 N.W.2d 529, 546 (2020). Trial counsel urged that Kellogg was not "a lost cause," and that he wants to "get away from the bad influences in Omaha" and "he's committed to change."

We find no deficiency in trial counsel's advocacy related to Kellogg's sentencing; this claim of ineffective assistance of counsel fails.

## VI. CONCLUSION

For the reasons stated above, we affirm Kellogg's sentence. We further find that all of Kellogg's claims of ineffective assistance of trial counsel fail.

AFFIRMED.